**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-631-TJK** |
| **v.** | : | |
| | : | |
| **WALTER J. MESSER,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Walter J. Messer to three months of incarceration, 60 hours of community service, $25 special assessment, and $500 in restitution.

## I.      Introduction

Defendant Walter J. Messer, who is 53 years old and operates a roofing company, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

Messer pleaded guilty to one count of parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  As explained herein, a sentence of three months of incarceration is appropriate in this case because: (1) on January 6, Messer chose to unlawfully enter the restricted area on the East Side of the Capitol despite witnessing, first-hand, that other rioters had breached the barricades by force; (2) as he joined the mob on the Capitol's steps on the East front, Messer posted multiple triumphant comments on social media (*e.g.*, "The capital [sic] just got stormed"; "[S]hit just got crazy"); (3) despite the mayhem around him, Messer entered the Capitol Building, where he continued taking photographs (some of them "selfies") and recording video; and (4) in the days after January 6, Messer made comments on social media celebrating the riot (*e.g.*, "[I]t was a blast!") and disseminating false information about the attack (*e.g.*, "There was no rioting.  Police were friendly for the most part"; "The police let us in.  They helped us get in. … They could have stopped everything easy if they had wanted to.").

The Court must also consider that Messer's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings.  Here, the facts and circumstances of Messer's crime support a sentence of three months of incarceration.

## II.    Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the United States Capitol agreed upon by the parties.  *See* ECF No. 50 (Statement of Offense), at 1-7.

2

*Messer's Role in the January 6, 2021 Attack on the Capitol*

By late 2020, Messer had become a consumer—and follower—of false information circulating on social media regarding the 2020 Presidential election.  In a December 4, 2020, Facebook exchange, for example, Messer told another Facebook user, "I was guessing/hoping this would be mostly over this month. … [M]artial law caught my attention lately."  In the same exchange, Messer also predicted that, once the election was "flipped," "[T]rump will release hell on the swamp."  Messer added that he "heard there will be months and months of trials."

Later in December 2020, Messer began planning with others—including Therese Borgerding, a friend and fellow follower of false information about the 2020 election—to be in Washington, D.C. on January 6, 2021.[2]  On January 5, Messer, Borgerding, Borgerding's husband, and a fourth individual traveled together from Ohio to the Washington, D.C. area.

On January 6, Messer, Borgerding, and their companions did not attend the Stop the Steal rally at the Ellipse.  Instead, in the early morning, they went directly to the United States Capitol, reaching the East Plaza at a time when the crowd was sparse.  Messer was wearing jeans, a black jacket, and a baseball cap with an American flag theme on the front.  At times, he draped himself in an American flag.  Borgerding was carrying a large sign with a letter "Q," which was affixed to a pole.

---

[2] On December 30, 2020, for example, Borgerding made the following statement on Facebook, in reference to former President Trump's call for his followers to come to Washington, D.C. on January 6: "I was thinking why does PRESIDENT [T]rump want so many people there at DC.  I Know it's important BUT WHAT IF the military goes in and arrested Mike Pence[,] MOST of Congress and Senators. Put them in SHACKLES and parade them in front of us at the Capitol building as they go to GITMO. !!!!!!! [N]ow that would be EPIC & WILD."



*Figure 1: Photograph of Messer*
*at the East Plaza barricades, taken at 7:04 a.m.*
*on 1/6/21 (retrieved from Messer's cell phone)*



*Figure 2: Open-source photograph of Messer*
*(circled) and Borgerding (carrying a "Q" sign)*
*at the East Plaza barricades*

By 2 p.m., a large crowd had amassed at the barricades on the Capitol's East Side, across from the central East Portico. Messer and Borgerding were standing immediately next to those barricades, which consisted of interlocking bike racks. At approximately 1:56 p.m., Messer posted on Facebook a picture of police officers in riot gear nearby, commenting: "[G]etting interesting." Three minutes later, at 1:59 p.m., as Messer was recording the events on his cell phone,[3] a group

---

[3] On January 7, 2021, Messer posted this video on YouTube as "Trump rally 1." The video is being submitted to the Court as Gov't Video Ex. 1.

of rioters breached the barricades a few feet to the south.  Within seconds, Borgerding took apart two interlocking bike racks that separated her (and Messer) from the East Plaza[4] and sprinted across the plaza:



*Figure 3: Still image from Messer's "Trump rally 1" YouTube video (at 0:33), capturing the East Side breach and Borgerding's dismantling of the barricades*

---

[4] Other rioters assisted Borgerding in separating the barricades.

Less than a minute later, Messer also marched past the same barricades.  Messer then crossed the plaza until he reached the bottom of the Capitol's steps on the East Front.  As Messer made his way toward the Capitol Building, he continued to record his progress using his cell phone, occasionally panning the camera to take in the events.



*Figure 4: Still image from Messer's "Trump rally 1" video (at 1:27) (front view)*



*Figure 5: Still image from Messer's "Trump rally 1" video (at 1:47) (camera pan view)*

Messer then spent the next hour, until approximately 3 p.m., on or near the East Steps of the United States Capitol.  While there, Messer recorded more videos and took more photographs, including a photograph of rioters surrounding the Rotunda Doors that he later posted on Facebook with the comment "Pats at the Door!":



*Figure 6: Screenshot of Messer's Facebook post*

Messer also celebrated the unfolding riot in real time on Facebook.  At 2:03 p.m., Messer posted: "[S]hit just got crazy."  At 2:16 p.m., Messer sent out another update, "[T]he capital [sic] just got stormed."  Along the way, Messer joined the crowd in jubilant chants.



*Figure 7: Still image of open-source video depicting Messer (circled)
as he joins in chants on the Capitol's East Steps*

At approximately 3 p.m., Messer entered the Capitol through the Rotunda Door.  Messer

then advanced deeper into the Capitol Building, reaching the Capitol's Rotunda.  There, Messer

recorded a video of the rioters in control of the Capitol, which he later posted on YouTube with

the caption, "Inside the Capital [sic]":[5]

---

[5] The video is being submitted to the Court as Gov't Video Ex. 2.



*Figure 8: Still image from Messer's*
*"Inside the Capital [sic]" video*

In the Rotunda, Messer also took several "selfies," two of which he later posted on Facebook.  In one of these selfies, Messer photographed himself next to a statute of Ronald Reagan; in the accompanying Facebook comment, Messer wrote, "little selfie with Ronnie."



*Figure 9: Messer's "selfie" in the Rotunda, posted on Facebook ("little selfie with Ronnie")*



*Figure 10: Messer's "selfie" in the Rotunda, posted on Facebook*

As Messer joined the mob in the Rotunda, several police officers began moving into the area to clear it of rioters.  Messer retreated, ultimately making his way back to the Rotunda Door and exiting at approximately 3:16 p.m.  Messer spent about 15 minutes inside the Capitol Building.

*Social Media Posts*

After the attack on the Capitol, Messer used Facebook and other social media to celebrate the riot and spread false information about the attack.  In the evening of January 6, Messer posted on Facebook and YouTube several of his photographs and videos from the riot, as noted above.  Later that evening, in a Facebook comment, Messer claimed, falsely, "There was no rioting[.]"

On January 7, 2021, Messer falsely stated in another Facebook post, "The police let us in.  They helped us get in.  I walked into the Capital [sic] with the police holding the doors open.  People entering and exiting was not orderly.  Some of the police seemed to be enjoying what was going on!   They could have stopped everything easy if they wanted to."  Later that day, in a

Facebook exchange, Messer wrote, "Everyone was freaking freezing from the cold but it was a blast.  It was well worth the trip.  I would have paid to be apart [sic] of that."  He later added, "I loved it.  As we were storming the Capital [sic] someone was blasting Twisted Sister weren't going to take it.  Over and over.  Crowd[] was pumped."

On January 8, Messer wrote in a Facebook message to another user: "We were there looking at these cops all day and then they invited us in."  On the same day, he stated, in another Facebook exchange, "Joe Biden is claiming Trump supporters were taking selfies with capital [sic] police.  This is true.  I'm glad the police took time out for these selfies during the fake riot."

On January 9, Messer messaged another user on Facebook stating, "its going down … cops let [us] in.  they wanted us in … the seige [sic] is on. … military might be taking cover [sic]."  The following day, Messer wrote, in response to another Facebook user's message, "[S]omething has to happen in the next 10 days.  I don't think there will be an inauguration."

On January 19, the day before Inauguration Day, Messer wrote in a Telegram group chat: "hope Biden gets arrested as he finishes inauguration."[6]  Two days later, he wrote to the same group: "nothing for nothing[.]  heard the pentagon did not give biden admin any info."  A couple of weeks later, on February 8, 2021, in response to a message by Borgerding that "The January 6th 'riot' was a false flag," Messer wrote, "yup."[7]

---

[6] The Telegram group chat, named "THE GREAT AWAKENING," was created by Therese Borgerding earlier that day.  Some QAnon followers use the term "great awakening" to refer to the point when the public "wakes up" to their conspiracy theory.

[7] Pursuant to his plea agreement, Messer agreed to be interviewed by law enforcement, and that interview is set to take place on September 7, 2023.

*The Charges and Plea Agreement*

On July 26, 2021, the United States charged Messer by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On July 28, 2021, law enforcement officers arrested him near the FBI office in Dayton, Ohio.  On the same day, the officers also executed a warrant to search Messer's residence, where he lives alone.  There, the officers found and seized several boxes of ammunition, which contained thousands of live rounds. On October 15, 2021, the United States charged Messer by a four-count information with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One); disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); disorderly or disruptive conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four).[8]  On June 10, 2023, pursuant to a plea agreement, Messer pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G).  In the plea agreement, Messer agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Messer now faces a sentencing on a single count of violating § 5104(e)(2)(G).  As noted in the plea agreement and the Presentence Investigation Report (PSR), Messer faces up to six months of imprisonment and a fine of up to $5,000.  He must also pay $500 in restitution under the terms of his plea agreement.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072,

---

[8] The Information also charged Borgerding with the same offenses.  Her trial is set for January 2024.

1078-79 (D.C. Cir. 2008).  As this offense is a Class B misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.  As explained below, the Section 3553(a) factors weigh in favor of three months of incarceration.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).  The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).  In assessing Messer's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors.  Notably, for a misdemeanor defendant like Messer, the absence of violent or destructive acts is not a mitigating factor.  Had Messer engaged in such conduct, he would have faced additional criminal charges.

Four factors, some of them interrelated, weigh in favor of a substantial term of incarceration in this case. *First*, Messer chose to unlawfully enter the restricted area—specifically, the Capitol's East Plaza—despite witnessing, first-hand, that other rioters had breached those barricades by force.  Messer's own video recording, which Messer later posted on YouTube, shows that Messer had a direct line of sight to the first, critical breach on the East Side.  The same video also shows that Messer had an unobstructed view of his associate, Therese Borgerding, as she helped dismantle the barricades that stood only a few feet in front of her and Messer—the same

13

barricades that Messer himself crossed less than a minute later.  That Messer chose to ignore these unmistakable signs that the riot was violent—and that it was fueled by the mob's force—weigh strongly in favor of incarceration in this case.

*Second*, as Messer joined the mob on the Capitol's East Steps, he posted multiple triumphant comments on social media.  Within five minutes of the initial breach on the East Side, Messer wrote in a status update, "[S]hit just got crazy."  Minutes later, he added, "The capital [sic] just got stormed."  The fact that Messer shared, in real time, celebratory updates during a riot dispels any suggestion that he somehow was a "passive" participant.

*Third*, despite witnessing the mayhem around him, Messer was not content with merely entering the restricted grounds.  After spending approximately one hour, illegally, on or around the Capitol's East Steps, Messer entered the Capitol Building itself.  Underscoring the brazenness of Messer's illegal conduct, once inside the Capitol, Messer recorded the rioters' occupation of the Rotunda and took multiple photographs, including selfies—material that, in part, Messer later shared on social media.

*Fourth*, after January 6, Messer repeatedly disseminated social media postings celebrating the riot and spreading false information about the attack.  As noted, Messer variously claimed that the January 6 attack was "a blast"; that he "loved it"; and that he "would have paid to be apart [sic] of that."  He also falsely claimed that the police "invited us in"; that they "wanted us in"; and that he "walked into the Capital [sic] with the police holding the doors open."  Most ominously, as late as January 10, 2021, Messer predicted, "[S]omething has to happen in the next 10 days.  I don't think there will be an inauguration."  Then, on the inauguration's eve, he wrote in a Telegram group chat: "hope Biden gets arrested as he finishes inauguration."

In short, the nature and the circumstances of Messer's conduct on January 6 demonstrate a clear need for a sentence of incarceration.

### B.  Messer's History and Characteristics

As set forth in the PSR, Messer's criminal history consists of a 1996 conviction in Ohio for attempted aggravated drug trafficking.  PSR ¶ 30.  That felony conviction, which resulted in a (suspended) sentence of three to 15 years in prison, permanently disqualified Messer from possessing any firearms or ammunition.  *See* 18 U.S.C. 922(g)(1).  When law enforcement officers searched Messer's home in July 2021, however, they found—and seized—several boxes of ammunition, which contained thousands of live rounds.  Messer's criminal history—and his ongoing inability to comply with the prohibitions flowing from that criminal past—also underscore the need for a term of incarceration.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law.  As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation.  I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." *United States v. Thomas Gallagher*, 1:21-cr-41-JCN Sent. Hrg. Tr. 10/13/2021 at 37. General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Specific deterrence also weighs in favor of a sentence of incarceration. It is true that Messer has accepted responsibility, at least to some extent, by pleading guilty. On the other side of the scale, however, Messer's criminal history—combined with his ongoing failure to comply with the prohibitions that flowed from that past—underscores a distinct, continued need for specific deterrence in this case. So, too, does the fact that Messer's participation in the January 6 attack was the result of an apocalyptic, conspiratorial view of the political process—an outlook that Messer has not persuasively shown he has abandoned. A meaningful deprivation of liberty, such as three months of imprisonment, will hopefully underscore for Messer the critical distinction between political advocacy and violent rioting, and the criminal nature of his conduct in this case.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from misdemeanors, such as in this case, to

assault on police officers, to conspiracy to corruptly interfere with Congress.[9]  This Court must sentence Messer based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Messer has pleaded guilty to Count Four of the information, charging him with demonstrating, parading, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  This offense is a Class B misdemeanor, 18 U.S.C. § 3559, to which, as noted, the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9.  The sentencing factors in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).  Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted.  *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

---

[9] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES."  The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court might consider, for reference, the sentence imposed in *United States v. Karl Dresch*, No. 1:21-cr-71-ABJ, another January 6 case.  Like Messer, in the weeks leading up to January 6, Dresch propagated through Facebook false information reflecting an apocalyptic view of the transfer of powers set to take place in January 2021—Dresch by equating the planned events for January 6, 2021, with the historical events on July 4, 1776, and Messer by predicting "martial law" and "months and months of trials."[10]  Like Messer, on January 6, Dresch posted live updates on social media as the attack on the United States Capitol was unfolding before his eyes.  Similarly to Messer, Dresch spent less than 30 minutes inside the Capitol Building.  Like Messer, in the hours and days following the January 6 attack, Dresch expressed satisfaction and enthusiasm on social media regarding the events at the Capitol, variously declaring "Total Victory!" and "I'm excited!"  Like Messer, Dresch participated in the January 6 attack despite being a convicted felon—Dresch after being convicted of fleeing and eluding arrest after engaging in a high-speed car and Messer, as noted, after being convicted of attempted aggravated drug trafficking (PSR ¶ 30).  Finally, as here, when Dresch's residence was searched in connection with his participation in the January 6 attack, the officers found contraband that Dresch, as a convicted felon, was prohibited from possessing—in Dresch's case, multiple firearms and boxes of ammunition, and in Messer's case, multiple boxes of ammunition.

For their conduct on January 6, both Dresch and Messer pleaded guilty pursuant to plea agreements to one count of parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  At sentencing, Judge Berman Jackson sentenced Dresch to 6 months

---

[10] To be sure, some of Dresch's social-media statements leading up to January 6—for example, "NO EXCUSES! NO RETREAT! NO SURRENDER! TAKE THE STREETS! TAKE BACK OUR COUNTRY! 1/6/2021=7/4/1776."—were more inflammatory than Messer's.

of incarceration.[11]  For his comparable (albeit marginally less culpable) conduct on January 6, Messer should receive, at a minimum, a sentence of three months of incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).  The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).  "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

---

[11] Because Dresch had already served more than six months in pretrial detention, he was sentenced to time served. *See United States v. Dresch*, 21-cr-71-ABJ, Aug. 4, 2021 Sent. Hrg. Tr. at 26.  At sentencing, the court made clear that "the six months [was] an appropriate sentence, even though it's already been served." *Id.* ("In other words, I don't want to leave the misimpression that the rush to plead and be sentenced and released today on time served is some sort of statement about the legitimacy of the detention in the first place.").

restitution under the VWPA).[12]  Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b).  At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Messer must pay $500 in restitution, which reflects in part the role Messer played in the riot on January 6.[13]  Plea Agreement ¶ 11.  As the plea agreement reflects, the riot at the Capitol had caused "approximately $2,734,783.14" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of April 2022. *Id.*[14]  Messer's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities.  PSR ¶ 67.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors.  Balancing these factors, the government recommends that this Court sentence Messer to three months of

---

[12] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[13] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

[14] As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, the United States Capitol Police, and the Metropolitan Police Department.

incarceration, 60 hours of community service, $25 special assessment, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Francesco Valentini*
Francesco Valentini
D.C. Bar No. 986769
Trial Attorney
United States Department of Justice, Criminal Division
Detailed to the D.C. United States Attorney's Office
601 D Street NW
Washington, D.C.  20530
(202) 598-2337
francesco.valentini@usdoj.gov