```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2
     UNITED STATES OF AMERICA,       ) Criminal Action
3                                    ) No. 1:21-CR-631
                    Plaintiff,       )
4                                    ) SENTENCING - VIA ZOOM
     vs.                             )
5                                    ) Washington, D.C.
     WALTER J. MESSER,               )
6                                    ) September 11, 2023
                    Defendant.       ) Time:  3:40 p.m.
7    _____
8          TRANSCRIPT OF SENTENCING - VIA ZOOM
        HELD BEFORE THE HONORABLE JUDGE TIMOTHY J. KELLY
9                UNITED STATES DISTRICT JUDGE
     _____
10
                    A P P E A R A N C E S
11
     For Plaintiff:          FRANCESCO VALENTINI
12                           DOJ-CRM
                             Criminal Division, Appellate Section
13                           950 Pennsylvania Avenue NW
                             Washington, DC 20530
14

15   For Defendant:          EDWARD SMOCK
                             Office of the Federal Public Defender
16                           625 Indiana Avenue, NW
                             Suite 550
17                           Washington, DC 20004

18   Also Present:           AIDEE GAVITO, Probation Officer

19   _____

20

21
     Court Reporter:         Tamara M. Sefranek, RMR, CRR, CRC
22                           Official Court Reporter
                             United States Courthouse, Room 6714
23                           333 Constitution Avenue, NW
                             Washington, DC  20001
24                           202-354-3246

25
```

```
1                      P R O C E E D I N G S
2              THE COURTROOM DEPUTY:  We are on the record in
3    Criminal Matter 21-631, United States of America v.
4    Defendant (1), Walter J. Messer.
5              Present for the government is Francesco Valentini.
6    Present from the United States Probation Office is Aidee
7    Gavito.  Present for the defendant is Edward Smock.  Also
8    present is the defendant, Mr. Messer.
9              THE COURT:  All right.  Well, good afternoon to all
10   of you.  We are here for Mr. Messer's sentencing.
11             I have received and reviewed the presentence report
12   in this case, a sentencing recommendation from the probation
13   office.  Those are ECF Numbers 57 and 58.  I've also received a
14   sentencing memoranda from the parties, which are ECF Numbers 59
15   and 61, including the video exhibits the government has
16   referenced.
17             Are there any other documents or materials for me to
18   review in preparation for sentencing Mr. Messer?  First, from
19   the government.
20             MR. VALENTINI:  No, Your Honor.  There are no further
21   materials.  I did want to thank the Court for its flexibility
22   in light of the delay.
23             THE COURT:  Understood.  Same question to you,
24   Mr. Smock.  Anything further for me?
25             MR. SMOCK:  Your Honor, no.  The one thing that I was
```

1    trying to double-check, and this may be something that is part

2    of the Court's practice.  But I don't think I saw the probation

3    sentencing recommendation.  It may be that that's something

4    that's not made accessible to the parties.

5              THE COURT:  No.  It is.  It's there as ECF Number 58.

6              MR. SMOCK:  Okay.

7              THE COURT:  It should be -- I believe it is routine

8    in our district now.  This was not always the case.  But I

9    believe it was fully available to the parties.

10             MR. SMOCK:  Very well.  I will -- I will glance at it

11   as we go.

12             THE COURT:  All right.  Very well.  Mr. Messer, our

13   sentencing hearing today is going to proceed in four steps.

14   All the while, I want you to keep in mind the seriousness of

15   why we are here.  You committed and pled guilty to a federal

16   crime, and today's proceeding is about the consequences you'll

17   face as a result of your decision to commit that crime.

18             The first step of our hearing today is for me to

19   determine whether you-all reviewed the presentence report and

20   whether there are any outstanding objections to that report,

21   and, if so, to resolve those objections.

22             The second step is, usually, for me to determine what

23   the sentencing guidelines say about your case, what sentencing

24   range applies to your case based on any criminal history you

25   have and considering any mitigating or aggravating factors that

 1    can warrant a departure under the sentencing guidelines.  But

 2    in this case, the offense here, the sentencing guidelines don't

 3    apply.  Even so, I will take that opportunity to clarify the

 4    sentencing framework under which we are operating the potential

 5    penalties at issue.

 6            The third step is for me to hear from the government,

 7    from your counsel and from you, if you wish to be heard, about

 8    sentencing in this case.

 9            And the last step requires me to fashion a just and

10    fair sentence in light of the factors that Congress has set

11    forth in 18 United States Code Section 3553(a).  As part of

12    that last step, I will actually impose the sentence, along with

13    other required consequences of the offense.

14            So the presentence report was filed in this case on

15    July 21st, 2023.  Let me thank the probation office for doing

16    that.  I know you-all have a lot of work on your hands these

17    days.  So it's appreciated.

18            So, first, does the government have any objection to

19    any of the factual determinations in the report?

20            MR. VALENTINI:  No, Your Honor, the government does

21    not.

22            THE COURT:  All right.  And same question to

23    Mr. Smock, do you-all have any objection to any of the factual

24    statements in the report?

25            MR. SMOCK:  I do not, Your Honor.  One thing that I

1    would -- I was just looking at the docket.  I -- 58 doesn't

2    appear on my docket, which is generally what happens when, for

3    some reason, not all parties are given access.

4              I would say that if -- I don't want to delay things.

5    If there's something in that recommendation that the Court is

6    going to rely upon or that the Court believes it would be

7    important for counsel to comment on, it might make sense for me

8    to look at it.  But other -- if not, then I -- I'm okay

9    proceeding.

10             THE COURT:  Here's what I think we'll do.  I don't

11   think you're going to see -- what I will do is just go ahead

12   and send this to you, Mr. Smock, or have Ms. Harris --

13   Ms. Harris, is there a way you can pick off, while we're

14   proceeding here, Document 58?

15             MR. SMOCK:  Actually, Ms. Gavito just sent this to me

16   now.

17             THE COURT:  That would have been even -- I don't know

18   why -- that would have been even easier.  Perfect.

19             So just for purposes of the facts, why don't you take

20   a look at it.  I doubt you will have any factual objection to

21   any of the facts in there.

22             And then, Mr. Smock, as we proceed, if you think that

23   there's something in there that you didn't have enough time to

24   address, we can address it at that point.

25             MR. SMOCK:  I'm fine to go forward.

```
 1              THE COURT:  All right.  So no factual objections?
 2              MR. SMOCK:  No, Your Honor.
 3              THE COURT:  Okay.
 4              MR. SMOCK:  Thank you.  I appreciate it.
 5              THE COURT:  All right.  Mr. Smock -- Mr. Messer, let
 6     me ask you, are you fully satisfied with your attorney,
 7     Mr. Smock, in this matter, sir?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  Okay.  And do you feel you've had enough
10     time to talk with him about the probation office's paperwork
11     here, the presentence report that they've compiled and the
12     papers the government has filed in connection with the
13     sentencing?
14              THE DEFENDANT:  Yes, I read through them.
15              THE COURT:  All right.  Have you had enough time to
16     talk with Mr. Smock about them.
17              THE DEFENDANT:  Yes.
18              THE COURT:  Okay.  And so you're prepared to proceed
19     with sentencing today, Mr. Messer?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Okay.  Well, I will then accept the facts
22     as stated in the presentence report, and the presentence report
23     will be my findings of fact for purposes of this sentencing.
24              Now, the presentence report lays out the --
25     proceeding to Step 2, the presentence report lays out the
```

1    statutory sentencing framework that applies in this case.  So

2    let me summarize it as follows:

3              First, as a preliminary matter, Mr. -- Congress has

4    imposed a statutory maximum sentence for the offense to which

5    Mr. Messer has pled guilty.  The statutory maximum is six

6    months for this Class B misdemeanor.  As far as probation goes,

7    the defendant is eligible for up to five years of probation.

8              As far as fine goes, the maximum fine is $5,000.

9    There's also a mandatory special assessment of $10 under 18

10   United States Code Section 3013(a).  And as far as supervised

11   release goes, supervised release is not applicable under the

12   relevant statutes.

13             And, finally, as our court of appeals most -- just --

14   I believe it was last month just clarified, I cannot sentence

15   Mr. Messer to both a sentence of incarceration and a sentence

16   of probation.  It must be one or the other.

17             Have I stated accurately the statutory framework

18   under which we are operating in regard to this case,

19   Mr. Valenti [sic]?

20             MR. VALENTINI:  Yes, Your Honor.

21             THE COURT:  Valentini.  Sorry about that.  Mr. Smock?

22             MR. SMOCK:  Yes, Your Honor.

23             THE COURT:  All right.  We now move to the part of

24   the matter, the consideration of the statutory factors under

25   18 United States Code 3553(a) and the opportunity for

1    Mr. Messer to address me if he so chooses.  And I must consider

2    these factors and ensure that I impose a sentence sufficient,

3    but not greater than necessary, to comply with the purposes of

4    sentencing.

5           Just for the record, those purposes include the need

6    for the sentence imposed to reflect the seriousness of the

7    offense, to promote respect for the law, and to provide just

8    punishment for the offense.  The sentence would also afford

9    adequate deterrence to criminal conduct, protect the public

10   from future crimes of the defendant, and promote

11   rehabilitation.

12          And in addition to the -- well, I don't consider the

13   guidelines here.  But in addition to -- the things that I must

14   consider are the nature and circumstances of the offense, the

15   history and characteristics of the defendant, the need for the

16   sentence imposed to comply with the purposes I just mentioned,

17   the kinds of sentences available, the need to avoid unwanted

18   sentence disparities among defendants with similar records who

19   have been found guilty of similar conduct, and the need to

20   provide restitution to victims of the offense.

21          So let me hear from the government on the factors set

22   forth in 3553(a) and to make a sentencing recommendation.

23          MR. VALENTINI:  Thank you, Your Honor.  The

24   government is requesting a sentence of three months of

25   incarceration in this case.  The sentence is sufficient, but is

1    no greater than necessary to give effect to the sentence

2    factors set forth in 3553(a).  It is the appropriate sentence

3    in this case.

4         As the Court is deeply aware, January 6th was a dark

5    day for our nation.  And the defendant in this case,

6    Mr. Messer, deliberately joined the disturbing events, the

7    riot, that took place that day at the United States Capitol.

8         We discussed the relevancy factors in our memorandum,

9    and I will not belabor the point by repeating each of them, but

10   I do want to touch on some of the most important considerations

11   in this case.

12        First, Mr. Messer chose to unlawfully enter the

13   restricted area on the east side of the Capitol after

14   witnessing firsthand that other rioters had breached those

15   barricades by force.  We have submitted as an exhibit the video

16   that Mr. Messer himself recorded on the East Plaza.  That video

17   makes clear Mr. Messer did not stumble upon a riot, he was not

18   a latecomer to the riot; he got there very early on, at dawn,

19   on January 6th.

20        He then observed and filmed as other rioters forcibly

21   breached the barricade, and he observed and filmed, as his own

22   travel mate and now co-defendant, Ms. Borgerding, disassembled

23   those barricades.  Mr. Messer chose to go and cross into the

24   restricted area anyway.

25        Second, Mr. Messer was not a reluctant participant in

1    the riot.  As he joined the mob on the Capitol steps on the

2    East Front, Mr. Messer posted at least two comments which can

3    best be described as triumphant; things like "The Capitol just

4    got stormed" and -- excuse my language -- "Shit just got

5    crazy."  Those comments make Mr. Messer's state of mind at the

6    time he committed his offenses unmistakable.

7           Third, Mr. Messer did go into the actual Capitol

8    Building.  And when he did, despite the mayhem around him,

9    Mr. Messer continued taking photographs, some of them selfies,

10   and recording video.

11          Now, we have included two of the selfies in our

12   sentencing memorandum, and we also have submitted as Sentencing

13   Exhibit No. 2, the short video clip that Mr. Messer recorded

14   inside the Rotunda of the Capitol.  And, importantly,

15   Mr. Messer left the Rotunda only when the Capitol Police

16   started clearing the area.

17          Fourth, Mr. Messer's conduct after January 6th is

18   also troubling in several respects.  It is also aggravating in

19   this case.  He continued to make comment after comment,

20   celebrating the riot and disseminating false information about

21   the attack.

22          I am not going to go through all those statements.

23   They are cited in our sentencing memorandum.  I'm not going to

24   waste the Court's time.  But those statements, some of them

25   were boastful, some of them were revisionist as to what

1    happened at the Capitol that day.  And some of them reflected

2    what we described in our memo.  We fully stand behind that

3    description as an apocalyptic and conspiratorial view of what

4    was supposed to be the peaceful transfer of power in January of

5    2021.

6            And, finally, but importantly, when officers searched

7    Mr. Messer's residence, they found a very significant amount of

8    ammunition even though he was prohibited, because of his

9    criminal history and his prior conviction of a felony, from

10   possessing any ammunition.

11           Mr. Messer's conduct on January 6th is, therefore,

12   serious, and so was his conduct after January 6th; at a

13   minimum, his possession of that ammunition.

14           At some level, of course, Mr. Messer has accepted

15   responsibility.  He has pleaded guilty, and he should receive a

16   reward for that decision.  But that acknowledgment of

17   responsibility does not undo the seriousness of his actions on

18   January 6th and surrounding January 6th.

19           It also does not erase the need for deterrence, both

20   general and specific, or the need to avoid unwarranted

21   disparities with other January 6th defendants.

22           On account of all those factors, we ask the Court to

23   impose a sentence of three months of incarceration, in addition

24   to community service and restitution.  Thank you, Your Honor.

25           THE COURT:  A couple of -- before I hear from

1        Mr. Smock, a couple of follow-ups.

2              Let me start with this.  Is it the government's

3        position -- this is kind of a little bit of an academic point.

4        But is it the government's position that I can impose -- even

5        though I cannot impose incarceration and probation, that I can

6        impose incarceration and community service?

7              Because, normally, the way community service works is

8        it's a condition of either the probation or the supervised

9        release, but I don't have that here.  So is that -- is the

10       government's position, though, that I can still order that?

11             MR. VALENTINI:  So our position is that the

12       community -- a term of community service could be ordered.

13       There is -- of course, could not be ordered as a condition of

14       probation because there would be no probation.  So then there's

15       a condition of enforcement, perhaps.

16             But the directive of completing a term of community

17       service seems separate from imposing a term of probation.

18             THE COURT:  Does probation agree with that analysis?

19             THE PROBATION OFFICER:  Your Honor, it is my

20       understanding that the Court may impose a term of custody as a

21       condition of probation.  Community service is separate or as

22       the Court -- according to home incarceration --

23             THE COURT:  I'm sorry.

24             THE COURT REPORTER:  I'm sorry.  The probation

25       officer is cutting in and out.

1          THE COURT:  Right.  Ms. Gavito, yeah.  We could not

2     hear you.

3          THE PROBATION OFFICER:  Yes, Your Honor.  So it is my

4     understanding that the Court may impose a term of custody as a

5     condition of probation.

6          THE COURT:  When you say -- hold on one second.  Of

7     course, I can -- when you say custody, you mean home

8     incarceration or home detention?

9          THE PROBATION OFFICER:  Yes, Your Honor.  Either home

10    detention, home incarceration or the -- or a term of custody

11    where the defendant is allowed to go to a Bureau of Prisons

12    center and then, like -- I don't want to call it a halfway

13    house, because it would be a Bureau of Prisons center.

14         THE COURT:  Okay.  But I cannot impose a term of

15    incarceration -- but is it your view -- I don't know -- whether

16    I can impose a term of incarceration, not home incarceration,

17    incarceration, and also a term of -- and also a requirement of

18    community service?

19         THE PROBATION OFFICER:  It would be a term of

20    incarceration as a condition of probation.

21         THE COURT:  But -- no.  But it wouldn't -- I mean, I

22    don't think straight incarceration for nine months what -- I'm

23    sorry -- three months, which is what the government is asking

24    for, that cannot be a term of probation?

25         THE PROBATION OFFICER:  No, Your Honor.  It would be

 1    something like home -- home detention, home incarceration, or a

 2    short term of custody at the Bureau of Prisons, and I've seen

 3    terms of custody range from 10 days, 20 days, up to 30 days,

 4    and the judges have imposed it to where they allowed the

 5    defendant to report for a week or do seven days straight.

 6              THE COURT:  Right.  That's intermittent confinement.

 7              THE PROBATION OFFICER:  Intermittent confinement,

 8    Judge.

 9              THE COURT:  Right.  Okay.  So if I did that, again,

10    that would all have to be in connection with a sentence of

11    probation?

12              THE PROBATION OFFICER:  Yes, Your Honor, as a

13    condition of probation.

14              THE COURT:  Right.  So I guess my point is, though,

15    again, if I don't impose probation, I cannot impose -- I'm

16    asking, I guess.  But I could not impose community service; is

17    that fair to say?

18              THE PROBATION OFFICER:  I guess I'm misunderstanding

19    the Court when you say community service.  For us it means

20    community service --

21              THE COURT:  It means community service -- I'm sorry?

22              THE PROBATION OFFICER:  Community -- I guess I'm

23    misunderstanding the Court when you say community service.  I

24    understand that to mean community service hours.

25              THE COURT:  Right.  Right.  Correct.  So, again, I

1    can't impose however many hours of community service without

2    there being a term of probation attached to that, correct?  In

3    other words --

4              THE PROBATION OFFICER:  I -- I would need to

5    double-check, Your Honor.  I'm going to message right now

6    because it would be -- yes.

7              THE COURT:  Okay.

8              THE PROBATION OFFICER:  Right.  I understand now.  I

9    understand.

10             THE COURT:  Okay.  If you get more information before

11   we -- before we conclude, I'd love to hear that.

12             THE PROBATION OFFICER:  Yes, Your Honor.

13             THE COURT:  Is it -- so, actually, this other

14   wrinkle, though, let me ask the government about -- I'll

15   certainly ask Mr. Smock about it.

16             Is it the government's -- the intermittent

17   confinement, is that something the government believes is

18   compatible with probation, or is that -- is that a sentence

19   that, in light of the Court of Appeals' most recent decision,

20   that I can impose?

21             MR. VALENTINI:  So that would be an alternative to

22   actual incarceration.  A term of intermittent confinement up

23   to -- and there is some limitations on how long it can be.  But

24   that would not conflict, certainly, with the holding of *Little*,

25   because that would remain within the realm of a probationary

 1    sentence.

 2              THE COURT:  Okay.

 3              MR. VALENTINI:  There are additional limits to how

 4    long the intermittent term can be and all that.

 5              THE COURT:  It's sort of vague in that regard, but

 6    there is some -- it certainly couldn't be 90 days, but it could

 7    be some lesser period.  Right.  Okay.

 8              MR. VALENTINI:  Substantially lesser, I understand.

 9              THE COURT:  Right, substantially.  And I

10    appreciate -- look, I think -- if it's not clear by my

11    questions, I think one of the things we, as judges, are going

12    to have to grapple with -- and I'm not sure how many judges

13    have at this point -- is grappling with that ruling that does

14    tie our hands in terms of having both a term of probation going

15    forward and also having -- and having a term of some

16    incarceration.

17              Let me ask the government also, you know, it's a

18    pretty -- I spent a lot of time looking at what I've done in

19    other cases.  Mr. Smock, I could have just looked at his

20    sentencing memo, because he laid out a lot of it.  But I've

21    looked at what I've done in other cases and also looking -- the

22    government gave me that link to the sentences that have been

23    handed down by my colleagues and that also, helpfully, also

24    lays out what other judges -- what the government had asked for

25    in those cases.

1          It's a pretty rare -- I couldn't find very many cases

2     at all in which the government had someone -- allowed someone

3     to plead to this misdemeanor, a Class B misdemeanor, and yet

4     also requested such a lengthy term of incarceration.  I mean,

5     you could probably count on one hand the number of cases in

6     which that was the posture; not saying that doesn't make it

7     wrong.  I just -- it's an unusual situation.

8          And you had -- we also had -- and you gave me that

9     comparison to the one case, which does have some interesting

10    parallels to Mr. Messer.  Although the offense was much more

11    recent, and there were other indications, I think, of -- that

12    the person was a danger to the community and the person -- it

13    was an unusual situation, as the person had been held and pled

14    out and sort of sentenced not so much going forward to six

15    months, but, effectively, time served by Judge Berman Jackson.

16    So there were some differences there.

17         I -- let me just ask the government, how much of your

18    recommendation is being driven by the defendant's prior felony

19    and then possession of ammunition?  I'm not saying that's

20    improper.

21         Frankly, again, I think Mr. Messer would fit

22    comfortably -- even before the Court of Appeals forced this

23    choice upon me, Mr. Messer probably lived up or would have fit

24    comfortably within, you know, many defendants that I -- whom I

25    have given probation to beforehand, if not for that -- that

1    prior conviction, which is -- I wish it wasn't there for his

2    sake, but it is there.

3              So I don't know.  Mr. Valentini, do you want to

4    comment on that?

5              MR. VALENTINI:  Yes, Your Honor.  And I appreciate

6    the question.  That is part of the reason why we identified the

7    Dresch case as a comparator in our analysis.  Because, while

8    the defendant's role in January 6th was there and was

9    significant, it's also appropriately reflected in terms of the

10   offense of conviction in the plea agreement.

11             At the same time, the prior conviction, and

12   especially the possession of ammunition and the quantity of

13   ammunition at issue, poses sentencing concerns with respect to

14   deterrence and public safety, which are not recurring in

15   January 6th cases.  For that reason, we offered the Karl Dresch

16   case as a comparator, and for that -- and it is a substantial

17   factor in this case.

18             I'm prepared to say that our recommendation would not

19   have been the same without that consideration.

20             THE COURT:  All right.  Let me hear from Mr. Smock.

21             MR. SMOCK:  Thank you, Your Honor.  Our

22   recommendation is 24 months of probation with 50 hours of

23   community service and $500 of restitution.  It's consistent

24   with sentences this Court has imposed for conduct that,

25   frankly, was more serious than that of Mr. Messer.  And it's

1   also consistent with probation's recommendation.

2          And I'll -- I'd be glad to address the issue of the

3   ammunition and Mr. Messer's prior conviction.  First of all,

4   Mr. Messer's prior conviction is from, I think, 25 years ago or

5   something.

6          THE COURT:  Long time ago.  Yes, I know.

7          MR. SMOCK:  It's a really long time ago.  He's a

8   totally different person now.  That was his only prior

9   conviction.  The ammunition was something that was in a closet

10  in a box.

11          This would be a totally different situation if,

12  number one, there was any indication that Mr. Messer had

13  expressed an interest in engaging in violence whatsoever.

14  Mr. Messer had said nothing of the sort.

15          So there's no connection whatsoever between this box

16  in the closet and anything Mr. Messer did in this case or even

17  suggested he might be interested in doing.  There are plenty of

18  January 6th cases, as this Court well knows, in which

19  defendants talk about coming to D.C. to engage in violence;

20  coming to D.C. to do something, you know, very serious to harm

21  people.  Mr. Messer is not that person.

22          And so nothing about that ammunition or that

23  conviction from 26 years ago relates in some way to the 3553(a)

24  factors in this case.  I think we would be in a different

25  position if the government could point to any statements by

 1    Mr. Messer suggesting a connection or suggesting an interest in
 2    engaging in violence.  And there's absolutely nothing in the
 3    record, and that's because there is no indication of that.
 4    It's not something at all in Mr. Messer's mind.

 5          I certainly don't want to minimize the seriousness of
 6    what happened on January 6th at all.  I don't want to minimize
 7    the seriousness of Mr. Messer's conduct, and I'll talk about
 8    it.  But I think the government's suggestion that this is a
 9    case which might warrant putting Mr. Messer in prison is overly
10    harsh.

11          Mr. Messer really is among the least serious
12    offenders charged with conduct on January 6th.  He's addressing
13    the 3553(a) factors.  Mr. Messer is a hard-working man.  He
14    worked at a factory for 13 years to support his family.  He
15    became an entrepreneur after that and now owns a roofing
16    business.

17          His focus is on his family.  It's on caring for his
18    sick mother, on caring for his children, and you see that in
19    the letters that Court received.  His mother has been ill, and
20    he's been focused on helping her.

21          You know, there's no denying the fact that in the
22    months after the election, Mr. Messer was following this
23    torrent of information that was coming to Americans, hundreds
24    of thousands of Americans, millions of Americans, from the
25    President of the United States and his followers, about this

1     election.

2            The Court is well aware that President Trump was

3     citing statistics, citing what he described as evidence that

4     the election was wrongly decided.  He was talking about it as a

5     national security issue.  He had the former mayor of New York

6     City by his side.  He had people referred to as the top

7     constitutional lawyers in the country by his side.

8            This wasn't some carnival barker standing on a street

9     corner.  This was the President of the United States.

10    Mr. Messer, admittedly, got swept up in that.  And he was

11    reading things online, and some of the stuff was not accurate,

12    he understands, in hindsight.  But he, like millions of

13    Americans, got swept up in this tide that was created by the

14    President and his people.

15           And he said some things -- none of it related to

16    violence; none of it related to anything like that -- but about

17    how he, like the President of the United States, thought that

18    the election might have been decided wrongly, and that's why he

19    came to Washington, D.C.  He didn't do it to engage in

20    violence, and he didn't engage in violence when he was here.

21           And what I think is perhaps just as important is that

22    he has now accepted responsibility, and that reflects the fact

23    that he's moved on with his life.  He doesn't hold on to these

24    views.  This is not a focus of his life at this point.  His

25    focus is on work and moving on.

1           So when -- and that, I think, is different than his

2    co-defendant, for example, who is going to trial in this case.

3    Mr. Messer has accepted responsibility and is moving on with

4    his life.

5           With respect to the nature and circumstances of the

6    offense, you know, Mr. Messer came to Washington -- he didn't

7    have plans to come to Washington for weeks in advance.  And you

8    don't see indications on social media that that was his plan

9    for weeks in advance or that he was urging people to come to

10   engage in violence.

11          He came, essentially, at the last minute when he was

12   invited by a group of people who came up with him to D.C.  What

13   they did was showed up at the Capitol early in the morning on

14   January 6th.  Mr. Valentini said Mr. Messer wasn't a latecomer

15   to the riot.  Well, I don't know that that's a totally accurate

16   way of describing what happened here.

17          Mr. Messer got there at dawn because he thought that

18   there were going to be speakers on the East Plaza of the

19   Capitol.  Why he believed that, I'm not entirely sure, but he

20   had been told that.  He stood on the East Plaza for several

21   hours.  There wasn't a riot at that time, nor was Mr. Messer

22   trying to make it into a riot.

23          So it's not as if Mr. Messer came and started

24   engaging in riotous behavior from the time that he got there.

25   He got there early in the morning and simply stood there in the

1    freezing cold waiting for what he believed was going to be a

2    speech on the east side of the Capitol, which is entirely

3    separate from the area where the President was speaking.

4            A crowd did come, and at some point members of that

5    crowd ahead of him picked up the bike racks and went through --

6    went towards the Capitol.  And Mr. Messer didn't immediately go

7    through.  He didn't take part in taking -- taking apart those

8    bike racks.  But after 30 seconds or a minute or so, he ends up

9    walking forward after many people have moved forward, and he

10   regrets doing that.  He shouldn't have done it.

11           He then went to the Capitol, and then for, I think

12   about an hour -- and Mr. Valentini can correct me if I'm

13   wrong -- he's in the area outside the Capitol.  He ultimately

14   goes back and stands back where he had been before.  He wasn't

15   part of a crowd fighting against the police at the doors to the

16   Rotunda.

17           But when he's told that people are going into the

18   Capitol long after he's first approached, he goes back, and as

19   the Court saw in my sentencing memorandum, he walked in the

20   door; police officers weren't trying to prevent him from going

21   in; but he knows he shouldn't have gone in.  I think it's

22   important to understand the difference between Mr. Messer and

23   people who were fighting against police officers, who were

24   yelling and screaming at police officers.  Mr. Messer is not

25   that person.

1          He shouldn't have gone into the Capitol, and there's

2     no denying that, and that's exactly why he pled guilty.  But

3     he's not a person fighting, insulting, or humiliating police

4     officers.  He went in, he was there for 15 minutes, he took a

5     picture with a bust of President Reagan and took some video,

6     and then he left.

7          It's true that he said some things on social media

8     afterwards, and I addressed those in my sentencing memo.  He

9     was, again, listening to this drumbeat of stories about,

10    quote-unquote, fake news, and he talked about what he had seen.

11    And he now understands that that wasn't a totally accurate

12    picture of what happened that day; specifically, on the west

13    side of the Capitol where he was not situated that day.

14         So he shouldn't have made those comments.  He said

15    that, and he understands that he got out of hand in his

16    comments after the fact.  But that doesn't take away from the

17    fact that, among the people involved that day, he is really

18    among the least culpable.

19         That doesn't take away from his culpability.  It

20    doesn't take away the seriousness of that day.  But when we're

21    discussing the question of whether he should go to prison, this

22    is not one of those cases.  And that's why probation agrees

23    that this is a case in which community service, restitution,

24    and this misdemeanor conviction are the appropriate response to

25    his conduct.

1        I talked a lot about the differences among sentences.

2   I think the Court noted the relevant aspects of the one case

3   cited by the government, the Dresch case.  I mean, Mr. Dresch

4   had a much more serious criminal history.  He had been in a

5   140-mile-per-hour pursuit, he had been detained by the court

6   for the six months prior to sentencing.  He had several serious

7   firearms in his house, including an assault rifle, two

8   shotguns, a pistol.  It's not a comparable case to Mr. Messer.

9        So for all of those reasons, the appropriate sentence

10  here is the one that probation suggests and the one that we

11  suggest, which is community service, a term of probation, and

12  restitution.

13        MR. VALENTINI:  Your Honor, if I may be heard very

14  quickly?

15        THE COURT:  Yes.

16        MR. VALENTINI:  First, by way of clarification, I

17  just wanted to clarify in response to Mr. Smock's question, the

18  point about the characterization of Mr. Messer's not having

19  been a latecomer to the riot.

20        The point is that he was there when the barricades

21  were breached.  That puts him in a different position vis-a-vis

22  the unfolding of that riot and the origin of the riot than

23  someone who may have joined the same area after those

24  barricades had been breached.  That's all we meant by that

25  characterization.

1          I did also want to go back to the question of

2    community service.  And after consulting with my office, we

3    would ask that the Court consider the two recommendations as

4    alternatives.  If the Court isn't inclined to impose a term of

5    incarceration, we would prefer, out of an abundance of caution

6    and in the absence at this point of further research on that

7    point and implications of *Little*, to not also have a term of

8    community service.

9          Of course, if the Court were to disagree with our

10   baseline recommendation and impose a term of probation instead,

11   then, of course, we would think that community service would

12   have to be -- would be appropriate in that case.

13         THE COURT:  Okay.  Understood.  Understood.

14         MR. VALENTINI:  Thank you.

15         THE COURT:  All right.  Mr. Smock, does Mr. Messer

16   want to -- I, obviously -- I saw what you submitted on his

17   behalf, including his statement.

18         Does he want to address me here today?

19         MR. SMOCK:  Mr. Messer, do you want to speak?

20         THE DEFENDANT:  Sure.

21         THE COURT:  Now is the time, sir.

22         THE DEFENDANT:  Judge Kelly, I want to apologize to

23   you and everyone else for walking into the Capitol.  I made a

24   bad decision that I regret.  I made comments that I should not

25   have made.

1            I did not know people were getting hurt and dying on

2 the other side of the Capitol.  That's a tragedy.  I had no

3 clue.  I had no intention of fighting or yelling at police.  I

4 take responsibility for my actions.

5            I apologize to everyone again.  I had no intent to

6 hurt anyone in any manner.  That's it.

7            THE COURT:  All right.  Very well.  We're going to

8 take a five-minute recess, and then I'll come back and impose

9 sentence.  So you all may remain on if you want and just darken

10 your video and turn off your microphones, but we'll be back.

11 We'll -- it's 4:20.  We'll reconvene at 4:25.

12            (Recess taken.)

13            THE COURTROOM DEPUTY:  We are back on the record in

14 Criminal Matter 21-631, United States of America v. Walter J.

15 Messer.

16            THE COURT:  All right.  Ms. Harris, are you with us?

17 Oh, hold on.  Ms. Harris, are you with us?

18            THE COURTROOM DEPUTY:  Yes.  I'm here.

19            THE COURT:  All right.  Very well.  I'm sorry.  I had

20 my -- I was muted, and I didn't realize I was.

21            All right.  I have assessed the particular facts of

22 this case in light of the relevant 3553(a) factors.  And I want

23 to provide my thoughts for the record and for you, Mr. Messer,

24 about my considerations in regard to the nature of the offense

25 and your history and characteristics.

1          Let me begin with my considerations with regard to

2     the nature of the offense.  So, you know, this is -- what

3     happened on January 6th, Mr. Messer, was a lot more than just

4     one person walking into the Capitol.  What happened that day

5     was considered, as far as the entire event goes -- which I

6     understand you're not responsible for -- but considering the

7     whole thing together, it was in some way as serious as an

8     offense as there can be given that it did threaten the peaceful

9     transfer of power from one President to another.

10          The damage that was done that day was both tangible

11     and intangible.  Your role, as I mentioned, was not the most

12     serious of anyone that day, but as far as the overall -- let me

13     just say a few words about the overall event.

14          Mr. Messer, our Constitution and our laws give you

15     rights that people in many other countries would just about

16     give anything for.  Maybe they don't give you rights.  Maybe I

17     should more accurately say they preserve rights that you have.

18     But in any event, the situation in our country is something

19     that people in many other countries would give just about

20     anything for and many Americans who came before us have died

21     for.

22          You can -- you can vote for whoever you want to for

23     President, you can speak out in favor of that candidate, you

24     can try to convince your friends or neighbors to vote for that

25     person.  And if you don't like how an election is being

1    conducted, you can speak out about that, too.  You can try to

2    get election laws changed and, ultimately, you can, of course,

3    engage in peaceful protests.  And if you think you've been

4    wronged and you have a case, you can file a lawsuit in state or

5    federal court.

6            But what you can't do is become part of a mob that,

7    using violence and the threat of violence, disrupts Congress's

8    ability to fulfill its role to process the certification of the

9    electoral college vote for President.  I know the offense to

10   which you pled guilty doesn't have anything about violence.  I

11   get it.

12           But, functionally, that's what the overall mob that

13   you were a part of did do that day.  And there's nothing

14   patriotic about it; no matter how much we don't like the way

15   the process of electing our President is proceeding.  What

16   happened that day was a blow against the customs and practices

17   that help support the rule of law and the Constitution.

18           And it broke our previously unbroken streak and

19   tradition of having a peaceful transfer of power.  And we can't

20   get that back without a lot of work and effort.  And you played

21   a role in that.

22           I do think your role -- as we turn to your role --

23   was -- I'm certainly more convinced by your lawyer than the

24   government that your role was limited.  Doesn't make it right;

25   but it was limited.  You weren't part of any groups that day.

1   You didn't, as far as I can see, engage in any significant

2   planning.

3           You yourself did not engage in any violence, damage

4   any property, or even move anything around that facilitated

5   what happened that day.  But you did contribute to the whole of

6   what happened that day.

7           The government points out you did film what happened

8   that day.  You did say things before and after that are

9   concerning.  But on the whole, your conduct that day, you

10  know -- I mean, it's certainly way toward the less serious.

11  The offense is serious, to be clear, but your conduct that day

12  is definitely, on the scale of seriousness, how serious folks'

13  conduct was generally, was way toward the side of it being less

14  serious.

15          Your characteristics as an offender.  You're 53 years

16  old, been successful at business, clearly.  I read your

17  letter -- and hear you today -- and the letter from your son.

18  There's some things here that are quite admirable about your

19  life, no question.

20          And I don't think we'd even be here -- I mean, I

21  don't even think -- well, we would be here, but we wouldn't be

22  here as far as the government asking for the kind of jail time

23  they're asking for here if you didn't have that drug conviction

24  and now the possession of ammunition, a separate felony; but a

25  felony drug conviction.

1          I take Mr. Smock's point.  It was a long time ago,

2     and that does -- there are a number of things I already

3     indicated that distinguishes this case from the Dresch case;

4     one of them being -- one of them being that -- well, we'll come

5     back to it.

6          One of them being, at least, that Mr. Dresch's

7     conviction was much more recent.  He did -- he had multiple

8     guns, not just ammunition.  He had other offenses that

9     suggested that he was dangerous; so dangerous that he was

10    detained when he was arrested in the case.  And whether -- who

11    knows what the judge would have done in sentencing him if she

12    was sort of writing on a clean slate.  But she ended up just

13    sentencing him to time served, which in that case ended up

14    being about six months.

15         You know -- but in any event, those are problems.

16    Those are -- even if they're not as serious as the Dresch case,

17    you know, again, I don't think -- I think the government's

18    request would be quite different if you didn't have those --

19    that history, plain and simple.

20         The next thing I also have to consider, in addition

21    to the seriousness of the offense, I have to make sure that the

22    sentence I give promotes respect for the law, provides just

23    punishment for the offense, and the offense should also -- the

24    sentence should also afford adequate deterrence for criminal

25    conduct, protect the public from future crimes, and promote

1    rehabilitation.

2            I do think general deterrence is critical here for

3    all the reasons I described about what happened on January 6th.

4    As far as specific deterrence goes, you know, it's hard to say.

5    Many people say things like, I'm sorry for walking in the

6    Capitol, without a genuine understanding of what collectively

7    was at stake on that day.

8            So I -- Mr. Messer certainly gets credit for taking

9    responsibility because he's here, and he's pled guilty to an

10   offense.  But I also have to measure how much the person really

11   understands what was at issue on that day, what was at stake,

12   and how serious that day was.  And I think it's sometimes hard

13   to estimate how people -- how much people really have --

14   understand the gravity of what happened that day.

15           The government has -- I also have to consider the

16   types of sentences available.  We've talked about the fact that

17   I don't have -- now that the Court of Appeals has ruled the way

18   it's ruled, I don't have the ability to sentence Mr. Messer to

19   incarceration and to probation.  And there are -- let me just

20   say, I mean, a term in which -- of probation, there are

21   benefits that we had, I think, in cases in which someone like

22   Mr. Messer is -- has to serve a period where -- a period of

23   probation.  There are benefits, I guess is my point, to

24   probation that wouldn't be fully available with a sentence of

25   full incarceration.

1          I also have to consider unwanted sentence

2    disparities.  We've talked about some of the cases here.  I've

3    spent more time than you-all would probably believe looking at

4    the sentences I've given and sentences that other judges have

5    given in similar cases.  I do think Mr. Messer's case is

6    relatively unusual in that -- again, I reiterate -- I think the

7    government's sentencing recommendation here is driven by

8    Mr. Messer's criminal history of a felony and his possession of

9    that ammunition.

10          As I said before, I think it's perfectly appropriate

11   to consider those things, but I think we'd be -- I think that I

12   probably would be looking at a very different sentencing

13   recommendation without those factors.  The question is, how

14   much do I weigh those things.  I think, Mr. Smock, as I said,

15   makes a good point that it was a long time ago.

16          I also have to consider restitution.  The parties

17   have agreed that $500 of restitution is appropriate.

18          So after considering all these factors and

19   considering what's sufficient, but not greater than necessary,

20   to comply with the purposes of sentencing, I am going to

21   sentence Mr. Messer to 24 months of probation, 60 hours of

22   community service, but also three months of home detention;

23   three months of home detention as a condition of his probation.

24          I'll just say I -- I weighed -- I think having

25   Mr. Messer under a term of probation is important here.  While

1    I did weigh the intermittent confinement possibility as well

2    as -- have we lost Mr. Valentini?  I saw him there a moment

3    ago.  Let me press pause for him to rejoin us.

4              (Pause in proceedings.)

5              THE COURT:  Ms. Harris, can you shoot him an email?

6              THE COURTROOM DEPUTY:  Yes.  He's attempting to

7    reconnect.

8              THE COURT:  Okay.

9              THE COURT:  All right.  Mr. Valentini, you're back

10   with us.  Or no?

11             THE COURTROOM DEPUTY:  He's still connecting to

12   audio.  Okay.

13             MR. VALENTINI:  Your Honor, my sincere apologies.

14             THE COURT:  All right.  I know how -- I've had --

15   sometimes the government is mad at my rulings, but usually they

16   still hang on for me to articulate them.

17             MR. VALENTINI:  My apologies.

18             THE COURT:  Your apology is accepted, Mr. Valentini.

19   All right.

20             So I do -- for all the reasons I indicated, again, I

21   think -- I'll just say I strongly considered intermittent

22   confinement or even incarceration here.  But I think, all

23   things being -- considering everything, including giving

24   Mr. Messer credit for having taken responsibility and pleading

25   guilty, number one; and two, the remoteness of that conviction,

1    this is how I'm coming out with regard to his sentence.

2            So I will now impose the sentence, which I include

3    after considering all the 3553(a) factors is sufficient, but

4    not greater than necessary, to comply with the purposes of

5    sentencing.

6            So pursuant to the Sentencing Reform Act of 1984 and

7    consideration of the provisions of 18 United States Code

8    Section 3553, it is the judgment of the Court that you,

9    Walter Messer, are hereby sentenced to a term of 24 months of

10   probation on Count 4.

11           In addition, you are ordered to pay a special

12   assessment of $10 in accordance with 18 United States Code

13   Section 3013.  While on supervision, you shall abide by the

14   following mandatory conditions, as well as all discretionary

15   conditions recommended by the probation office in Part D,

16   sentencing options of the presentence report, which are imposed

17   to establish the basic expectations for your conduct while on

18   supervision.

19           Mandatory conditions include, one, you must not

20   commit another federal, state, or local crime.

21           Two, you must not unlawfully possess a controlled

22   substance.

23           Three, you must refrain from unlawful use of a

24   controlled substance.  You must submit to one drug test within

25   15 days of placement on supervision, and at least two periodic

1    drug tests thereafter as determined by the Court.

2          And four, you must make restitution in accordance

3    with 18 United States Code Sections 3663 and 3663(a), or any

4    other statute authorizing a sentence of restitution.

5          You shall also comply with the following special

6    conditions.  And I do authorize supervision of this case to be

7    transferred to the United States District Court for the

8    Southern District of Ohio.

9          You are ordered to make restitution in the amount of

10   $500 to the Architect of the Capitol.  I do determine that you

11   do not have the ability to pay interest and, therefore, I waive

12   interest or penalties that may occur on the balance.

13   Restitution payments shall be made to the Clerk of the Court

14   for the United States District Court, District of Columbia, for

15   disbursement to the following victim.  The Architect of the

16   Capitol, Office of the Chief Financial Officer, Ford House

17   Office Building, Room H2-205D, Washington, D.C., 20515.  The

18   amount of loss is $500.

19         You must pay the balance of any restitution within 30

20   days of this judgment or at a rate of no less than $20 per

21   month.  Also, community service; you must complete 60 hours of

22   community service within 24 months.  The probation officer will

23   approve the community service program.  You must provide

24   written verification of the completed hours to the probation

25   officer.

1          Firearm restriction.  You shall remove firearms,

2    destructive devices, or other dangerous weapons from areas over

3    which you have access or control until the term of supervision

4    expires.

5          And, finally, location monitoring.  You will be

6    monitored by the form of location monitoring technology

7    indicated herein for a period of 90 days, and you must follow

8    the rules and regulations of the location monitoring program.

9          The cost of the program is waived.  Location

10   monitoring technology is at the discretion of the probation

11   officer, including radiofrequency, or RF monitoring, GPS

12   monitoring, including hybrid GPS, SmartLink, or voice

13   recognition.

14         This form of location monitoring technology will be

15   used to monitor the following restriction on your movement in

16   the community.  You are restricted to your residence at all

17   times except for employment, education, religious services,

18   medical, substance abuse, or mental health treatment, attorney

19   visits, court appearances, court-ordered obligations, or other

20   activities as pre-approved by the officer.  That is home

21   detention.

22         Again, you'll be monitored by the form of location

23   monitoring technology indicated for a period of 90 days.

24         Finally, the financial obligations are immediately

25   payable to the Clerk of the Court of the U.S. District Court,

1    333 Constitution Avenue Northwest, Washington, D.C., 20001.

2    Within 30 days of any change of address, you shall notify the

3    Clerk of the Court of the change until such time as the

4    financial obligation is paid in full.

5         The probation office shall release the presentence

6    investigation report to all appropriate agencies, which

7    includes the United States Probation Office in the approved

8    district of residence.  In order to execute the sentence of the

9    Court, treatment agencies shall return the presentence report

10   to the probation office on the defendant's completion or

11   termination from treatment.

12        Mr. Messer, you can appeal your conviction if you

13   believe that your guilty plea was somehow unlawful or

14   involuntary or -- somehow unlawful or involuntary or if there's

15   some other fundamental defect in the proceedings that was not

16   waived in your plea agreement.

17        In some circumstances you also may have the right to

18   challenge -- in some circumstances you may also have the right

19   to appeal your sentence.  However, a defendant may waive that

20   right as part of a plea agreement, and you have entered into a

21   plea agreement which waives some of your rights to appeal the

22   sentence itself.

23        Any notice of appeal must be filed within 14 days of

24   entry of judgment or within 14 days of the filing of notice --

25   of a notice of appeal by the government.  If you are unable to

```
 1    afford the cost of an appeal, you may request permission from

 2    the Court to file an appeal without cost to you.  And, on

 3    appeal, you may also apply for court-appointed counsel.

 4           Let me ask both counsel, are there any objections to

 5    the sentence I've imposed that are not already noted on the

 6    record?  Mr. Valentini?

 7           MR. VALENTINI:  No additional objections, Your Honor.

 8           THE COURT:  Mr. Smock?

 9           MR. SMOCK:  No, Your Honor.

10           THE COURT:  All right.  Very well.  Good luck to you.

11    Well, do I have -- yes.  Do I have a motion from the

12    government?

13           MR. VALENTINI:  The government would move to dismiss

14    Counts 1, 2, and 3 pursuant to the plea agreement.

15           THE COURT:  All right.  And that motion will be

16    granted.

17           Anything further from the government?

18           MR. VALENTINI:  No, Your Honor.  Thank you.  And

19    apologies for the technical difficulties.

20           THE COURT:  That's all right.

21           Anything further from you, Mr. Smock?

22           MR. SMOCK:  No.  Thank you, Your Honor.

23           THE COURT:  All right.  Good luck to you Mr. Messer.

24    That was -- you know, as I tell everyone -- you didn't say

25    this, but some defendants come before me and they say, I don't
```

1    want to engage in politics anymore.  I'm done with all that,

2    Judge.  And I say, nothing wrong with engaging in politics.

3    Politics is what -- every American's right to engage in.  But

4    that doesn't -- obviously, what happened on January 6th is

5    something that cannot be repeated.  But good luck to you, sir.

6              THE DEFENDANT:  Thank you.

7              THE COURT:  If there's nothing further then, the

8    parties are dismissed.

9                   (The hearing adjourned at 4:55 p.m.)

1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3        I, TAMARA M. SEFRANEK, do hereby certify that the

4  above and foregoing constitutes a true and accurate transcript

5  of my stenographic notes and is a full, true, and complete

6  transcript of the proceedings to the best of my ability.

7         Dated this 23rd day of October, 2023.

8

9              /s/ Tamara M. Sefranek_____
                Tamara M. Sefranek, RMR, CRR, CRC
10             Official Court Reporter
                Room 6714
11             333 Constitution Avenue, N.W.
                Washington, D.C.  20001

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$10** [2] - 7:9, 35:12
**$20** [1] - 36:20
**$5,000** [1] - 7:8
**$500** [4] - 18:23, 33:17, 36:10, 36:18

## /

**/s** [1] - 41:9

## 1

**1** [2] - 2:4, 39:14
**10** [1] - 14:3
**11** [1] - 1:6
**13** [1] - 20:14
**14** [2] - 38:23, 38:24
**140-mile-per-hour** [1] - 25:5
**15** [2] - 24:4, 35:25
**18** [6] - 4:11, 7:9, 7:25, 35:7, 35:12, 36:3
**1984** [1] - 35:6
**1:21-CR-631** [1] - 1:3

## 2

**2** [3] - 6:25, 10:13, 39:14
**20** [1] - 14:3
**20001** [3] - 1:23, 38:1, 41:11
**20004** [1] - 1:17
**202-354-3246** [1] - 1:24
**2021** [1] - 11:5
**2023** [3] - 1:6, 4:15, 41:7
**20515** [1] - 36:17
**20530** [1] - 1:13
**21-631** [2] - 2:3, 27:14
**21st** [1] - 4:15
**23rd** [1] - 41:7
**24** [4] - 18:22, 33:21, 35:9, 36:22
**25** [1] - 19:4
**26** [1] - 19:23

## 3

**3** [1] - 39:14
**30** [4] - 14:3, 23:8, 36:19, 38:2
**3013** [1] - 35:13
**3013(a)** [1] - 7:10
**333** [3] - 1:23, 38:1, 41:11
**3553** [1] - 35:8

**3553(a** [6] - 7:25, 8:22, 19:23, 20:13, 27:22, 35:3
**3553(a)** [2] - 4:11, 9:2
**3663** [1] - 36:3
**3663(a** [1] - 36:3
**3:40** [1] - 1:6

## 4

**4** [1] - 35:10
**4:20** [1] - 27:11
**4:25** [1] - 27:11
**4:55** [1] - 40:9

## 5

**50** [1] - 18:22
**53** [1] - 30:15
**550** [1] - 1:16
**57** [1] - 2:13
**58** [4] - 2:13, 3:5, 5:1, 5:14
**59** [1] - 2:14

## 6

**60** [2] - 33:21, 36:21
**61** [1] - 2:15
**625** [1] - 1:16
**6714** [2] - 1:22, 41:10
**6th** [17] - 9:4, 9:19, 10:17, 11:11, 11:12, 11:18, 11:21, 18:8, 18:15, 19:18, 20:6, 20:12, 22:14, 28:3, 32:3, 40:4

## 9

**90** [3] - 16:6, 37:7, 37:23
**950** [1] - 1:13

## A

**abide** [1] - 35:13
**ability** [4] - 29:8, 32:18, 36:11, 41:6
**absence** [1] - 26:6
**absolutely** [1] - 20:2
**abundance** [1] - 26:5
**abuse** [1] - 37:18
**academic** [1] - 12:3
**accept** [1] - 6:21
**accepted** [4] - 11:14, 21:22, 22:3, 34:18
**access** [2] - 5:3, 37:3
**accessible** [1] - 3:4
**accordance** [2] -

35:12, 36:2
**according** [1] - 12:22
**account** [1] - 11:22
**accurate** [4] - 21:11, 22:15, 24:11, 41:4
**accurately** [2] - 7:17, 28:17
**acknowledgment** [1] - 11:16
**Act** [1] - 35:6
**Action** [1] - 1:2
**actions** [2] - 11:17, 27:4
**activities** [1] - 37:20
**actual** [2] - 10:7, 15:22
**addition** [5] - 8:12, 8:13, 11:23, 31:20, 35:11
**additional** [2] - 16:3, 39:7
**address** [6] - 5:24, 8:1, 19:2, 26:18, 38:2
**addressed** [1] - 24:8
**addressing** [1] - 20:12
**adequate** [2] - 8:9, 31:24
**adjourned** [1] - 40:9
**admirable** [1] - 30:18
**admittedly** [1] - 21:10
**advance** [2] - 22:7, 22:9
**afford** [3] - 8:8, 31:24, 39:1
**afternoon** [1] - 2:9
**afterwards** [1] - 24:8
**agencies** [2] - 38:6, 38:9
**aggravating** [2] - 3:25, 10:18
**ago** [7] - 19:4, 19:6, 19:7, 19:23, 31:1, 33:15, 34:3
**agree** [1] - 12:18
**agreed** [1] - 33:17
**agreement** [5] - 18:10, 38:16, 38:20, 38:21, 39:14
**agrees** [1] - 24:22
**ahead** [2] - 5:11, 23:5
**Aidee** [1] - 2:6
**AIDEE** [1] - 1:18
**allowed** [3] - 13:11, 14:4, 17:2
**alternative** [1] - 15:21
**alternatives** [1] - 26:4
**AMERICA** [1] - 1:2
**America** [2] - 2:3, 27:14
**American's** [1] - 40:3

**Americans** [5] - 20:23, 20:24, 21:13, 28:20
**ammunition** [12] - 11:8, 11:10, 11:13, 17:19, 18:12, 18:13, 19:3, 19:9, 19:22, 30:24, 31:8, 33:9
**amount** [3] - 11:7, 36:9, 36:18
**analysis** [2] - 12:18, 18:7
**anyway** [1] - 9:24
**apart** [1] - 23:7
**apocalyptic** [1] - 11:3
**apologies** [3] - 34:13, 34:17, 39:19
**apologize** [2] - 26:22, 27:5
**apology** [1] - 34:18
**appeal** [8] - 38:12, 38:19, 38:21, 38:23, 38:25, 39:1, 39:2, 39:3
**appeals** [1] - 7:13
**Appeals** [2] - 17:22, 32:17
**Appeals'** [1] - 15:19
**appear** [1] - 5:2
**appearances** [1] - 37:19
**Appellate** [1] - 1:12
**applicable** [1] - 7:11
**applies** [2] - 3:24, 7:1
**apply** [2] - 4:3, 39:3
**appointed** [1] - 39:3
**appreciate** [2] - 6:4, 16:10, 18:5
**appreciated** [1] - 4:17
**approached** [1] - 23:18
**appropriate** [7] - 9:2, 24:24, 25:9, 26:12, 33:10, 33:17, 38:6
**appropriately** [1] - 18:9
**approve** [1] - 36:23
**approved** [2] - 37:20, 38:7
**Architect** [2] - 36:10, 36:15
**area** [6] - 9:13, 9:24, 10:16, 23:3, 23:13, 25:23
**areas** [1] - 37:2
**arrested** [1] - 31:10
**articulate** [1] - 34:16
**aspects** [1] - 25:2
**assault** [1] - 25:7
**assessed** [1] - 27:21
**assessment** [2] - 7:9,

35:12
**attached** [1] - 15:2
**attack** [1] - 10:21
**attempting** [1] - 34:6
**attorney** [2] - 6:6, 37:18
**audio** [1] - 34:12
**authorize** [1] - 36:6
**authorizing** [1] - 36:4
**available** [4] - 3:9, 8:17, 32:16, 32:24
**Avenue** [5] - 1:13, 1:16, 1:23, 38:1, 41:11
**avoid** [2] - 8:17, 11:20
**aware** [2] - 9:4, 21:2

## B

**bad** [1] - 26:24
**balance** [2] - 36:12, 36:19
**barker** [1] - 21:8
**barricade** [1] - 9:21
**barricades** [4] - 9:15, 9:23, 25:20, 25:24
**based** [1] - 3:24
**baseline** [1] - 26:10
**basic** [1] - 35:17
**became** [1] - 20:15
**become** [1] - 29:6
**BEFORE** [1] - 1:8
**beforehand** [1] - 17:25
**begin** [1] - 28:1
**behalf** [1] - 26:17
**behavior** [1] - 22:24
**behind** [1] - 11:2
**belabor** [1] - 9:9
**believes** [2] - 5:6, 15:17
**benefits** [2] - 32:21, 32:23
**Berman** [1] - 17:15
**best** [2] - 10:3, 41:6
**between** [2] - 19:15, 23:22
**bike** [2] - 23:5, 23:8
**bit** [1] - 12:3
**blow** [1] - 29:16
**boastful** [1] - 10:25
**Borgerding** [1] - 9:22
**box** [2] - 19:10, 19:15
**breached** [4] - 9:14, 9:21, 25:21, 25:24
**broke** [1] - 29:18
**Building** [2] - 10:8, 36:17
**Bureau** [3] - 13:11, 13:13, 14:2

**business** [2] - 20:16, 30:16
**bust** [1] - 24:5

## C

**candidate** [1] - 28:23
**cannot** [6] - 7:14, 12:5, 13:14, 13:24, 14:15, 40:5
**Capitol** [23] - 9:7, 9:13, 10:1, 10:3, 10:7, 10:14, 10:15, 11:1, 22:13, 22:19, 23:2, 23:6, 23:11, 23:13, 23:18, 24:1, 24:13, 26:23, 27:2, 28:4, 32:6, 36:10, 36:16
**caring** [2] - 20:17, 20:18
**carnival** [1] - 21:8
**case** [36] - 2:12, 3:8, 3:23, 3:24, 4:2, 4:8, 4:14, 7:1, 7:18, 8:25, 9:3, 9:5, 9:11, 10:19, 17:9, 18:7, 18:16, 18:17, 19:16, 19:24, 20:9, 22:2, 24:23, 25:2, 25:3, 25:8, 26:12, 27:22, 29:4, 31:3, 31:10, 31:13, 31:16, 33:5, 36:6
**cases** [11] - 16:19, 16:21, 16:25, 17:1, 17:5, 18:15, 19:18, 24:22, 32:21, 33:2, 33:5
**caution** [1] - 26:5
**celebrating** [1] - 10:20
**center** [2] - 13:12, 13:13
**certainly** [7] - 15:15, 15:24, 16:6, 20:5, 29:23, 30:10, 32:8
**CERTIFICATE** [1] - 41:1
**certification** [1] - 29:8
**certify** [1] - 41:3
**challenge** [1] - 38:18
**change** [2] - 38:2, 38:3
**changed** [1] - 29:2
**characteristics** [3] - 8:15, 27:25, 30:15
**characterization** [2] - 25:18, 25:25
**charged** [1] - 20:12
**check** [2] - 3:1, 15:5
**Chief** [1] - 36:16

**children** [1] - 20:18
**choice** [1] - 17:23
**chooses** [1] - 8:1
**chose** [2] - 9:12, 9:23
**circumstances** [4] - 8:14, 22:5, 38:17, 38:18
**cited** [2] - 10:23, 25:3
**citing** [2] - 21:3
**City** [1] - 21:6
**clarification** [1] - 25:16
**clarified** [1] - 7:14
**clarify** [2] - 4:3, 25:17
**Class** [2] - 7:6, 17:3
**clean** [1] - 31:12
**clear** [3] - 9:17, 16:10, 30:11
**clearing** [1] - 10:16
**clearly** [1] - 30:16
**Clerk** [3] - 36:13, 37:25, 38:3
**clip** [1] - 10:13
**closet** [2] - 19:9, 19:16
**clue** [1] - 27:3
**co** [2] - 9:22, 22:2
**co-defendant** [2] - 9:22, 22:2
**Code** [6] - 4:11, 7:10, 7:25, 35:7, 35:12, 36:3
**cold** [1] - 23:1
**colleagues** [1] - 16:23
**collectively** [1] - 32:6
**college** [1] - 29:9
**Columbia** [1] - 36:14
**COLUMBIA** [1] - 1:1
**comfortably** [2] - 17:22, 17:24
**coming** [4] - 19:19, 19:20, 20:23, 35:1
**comment** [4] - 4:7, 10:19, 18:4
**comments** [5] - 10:2, 10:5, 24:14, 24:16, 26:24
**commit** [2] - 3:17, 35:20
**committed** [2] - 3:15, 10:6
**community** [28] - 11:24, 12:6, 12:7, 12:12, 12:16, 12:21, 13:18, 14:16, 14:19, 14:20, 14:21, 14:22, 14:23, 14:24, 15:1, 17:12, 18:23, 24:23, 25:11, 26:2, 26:8, 26:11, 33:22, 36:21, 36:22, 36:23, 37:16

**comparable** [1] - 25:8
**comparator** [2] - 18:7, 18:16
**comparison** [1] - 17:9
**compatible** [1] - 15:18
**compiled** [1] - 6:11
**complete** [2] - 36:21, 41:5
**completed** [1] - 36:24
**completing** [1] - 12:16
**completion** [1] - 38:10
**comply** [5] - 8:3, 8:16, 33:20, 35:4, 36:5
**concerning** [1] - 30:9
**concerns** [1] - 18:13
**conclude** [1] - 15:11
**condition** [8] - 12:8, 12:13, 12:15, 12:21, 13:5, 13:20, 14:13, 33:23
**conditions** [4] - 35:14, 35:15, 35:19, 36:6
**conduct** [14] - 8:9, 8:19, 10:17, 11:11, 11:12, 18:24, 20:7, 20:12, 24:25, 30:9, 30:11, 30:13, 31:25, 35:17
**conducted** [1] - 29:1
**confinement** [6] - 14:6, 14:7, 15:17, 15:22, 34:1, 34:22
**conflict** [1] - 15:24
**Congress** [2] - 4:10, 7:3
**Congress's** [1] - 29:7
**connecting** [1] - 34:11
**connection** [4] - 6:12, 14:10, 19:15, 20:1
**consequences** [2] - 3:16, 4:13
**consider** [9] - 8:1, 8:12, 8:14, 26:3, 31:20, 32:15, 33:1, 33:11, 33:16
**consideration** [3] - 7:24, 18:19, 35:7
**considerations** [3] - 9:10, 27:24, 28:1
**considered** [2] - 28:5, 34:21
**considering** [6] - 3:25, 28:6, 33:18, 33:19, 34:23, 35:3
**consistent** [2] - 18:23, 19:1
**conspiratorial** [1] - 11:3
**constitutes** [1] - 41:4
**Constitution** [5] -

1:23, 28:14, 29:17, 38:1, 41:11
**constitutional** [1] - 21:7
**consulting** [1] - 26:2
**continued** [2] - 10:9, 10:19
**contribute** [1] - 30:5
**control** [1] - 37:3
**controlled** [2] - 35:21, 35:24
**conviction** [14] - 11:9, 18:1, 18:10, 18:11, 19:3, 19:4, 19:9, 19:23, 24:24, 30:23, 30:25, 31:7, 34:25, 38:12
**convince** [1] - 28:24
**convinced** [1] - 29:23
**corner** [1] - 21:9
**correct** [3] - 14:25, 15:2, 23:12
**cost** [2] - 37:9, 39:1, 39:2
**counsel** [4] - 4:7, 5:7, 39:3, 39:4
**count** [1] - 17:5
**Count** [1] - 35:10
**countries** [2] - 28:15, 28:19
**country** [2] - 21:7, 28:18
**Counts** [1] - 39:14
**couple** [2] - 11:25, 12:1
**course** [6] - 11:14, 12:13, 13:7, 26:9, 26:11, 29:2
**Court** [35] - 1:21, 1:22, 2:21, 5:5, 5:6, 9:4, 11:22, 12:20, 12:22, 13:4, 14:19, 14:23, 15:19, 17:22, 18:24, 19:18, 20:19, 21:2, 23:19, 25:2, 26:3, 26:4, 26:9, 32:17, 35:8, 36:1, 36:7, 36:13, 36:14, 37:25, 38:3, 38:9, 39:2, 41:10
**COURT** [58] - 1:1, 2:9, 2:23, 3:5, 3:7, 3:12, 4:22, 5:10, 5:17, 6:1, 6:3, 6:5, 6:9, 6:15, 6:18, 6:21, 7:21, 7:23, 11:25, 12:18, 12:23, 12:24, 13:1, 13:6, 13:14, 13:21, 14:6, 14:9, 14:14, 14:21, 14:25, 15:7,

15:10, 15:13, 16:2, 16:5, 16:9, 18:20, 19:6, 25:15, 26:13, 26:15, 26:21, 27:7, 27:16, 27:19, 34:5, 34:8, 34:9, 34:14, 34:18, 39:8, 39:10, 39:15, 39:20, 39:23, 40:7, 41:1
**court** [6] - 7:13, 25:5, 29:5, 37:19, 39:3
**Court's** [2] - 3:2, 10:24
**court-appointed** [1] - 39:3
**court-ordered** [1] - 37:19
**Courthouse** [1] - 1:22
**COURTROOM** [5] - 2:2, 27:13, 27:18, 34:6, 34:11
**crazy** [1] - 10:5
**CRC** [2] - 1:21, 41:9
**created** [1] - 21:13
**credit** [2] - 32:8, 34:24
**crime** [3] - 3:16, 3:17, 35:20
**crimes** [2] - 8:10, 31:25
**Criminal** [4] - 1:2, 1:12, 2:3, 27:14
**criminal** [6] - 3:24, 8:9, 11:9, 25:4, 31:24, 33:8
**critical** [1] - 32:2
**CRM** [1] - 1:12
**cross** [1] - 9:23
**crowd** [3] - 23:4, 23:5, 23:15
**CRR** [2] - 1:21, 41:9
**culpability** [1] - 24:19
**culpable** [1] - 24:18
**custody** [6] - 12:20, 13:4, 13:7, 13:10, 14:2, 14:3
**customs** [1] - 29:16
**cutting** [1] - 12:25

## D

**D.C** [8] - 1:5, 19:19, 19:20, 21:19, 22:12, 36:17, 38:1, 41:11
**damage** [2] - 28:10, 30:3
**danger** [1] - 17:12
**dangerous** [3] - 31:9, 37:2
**dark** [1] - 9:4
**darken** [1] - 27:9
**Dated** [1] - 41:7

**dawn** [2] - 9:18, 22:17
**days** [13] - 4:17, 14:3, 14:5, 16:6, 35:25, 36:20, 37:7, 37:23, 38:2, 38:23, 38:24
**DC** [3] - 1:13, 1:17, 1:23
**decided** [2] - 21:4, 21:18
**decision** [4] - 3:17, 11:16, 15:19, 26:24
**deeply** [1] - 9:4
**defect** [1] - 38:15
**DEFENDANT** [7] - 6:8, 6:14, 6:17, 6:20, 26:20, 26:22, 40:6
**defendant** [12] - 2:4, 2:7, 2:8, 7:7, 8:10, 8:15, 9:5, 9:22, 13:11, 14:5, 22:2, 38:19
**Defendant** [2] - 1:6, 1:15
**defendant's** [3] - 17:18, 18:8, 38:10
**defendants** [5] - 8:18, 11:21, 17:24, 19:19, 39:25
**Defender** [1] - 1:15
**definitely** [1] - 30:12
**delay** [2] - 2:22, 5:4
**deliberately** [1] - 9:6
**denying** [2] - 20:21, 24:2
**departure** [1] - 4:1
**DEPUTY** [5] - 2:2, 27:13, 27:18, 34:6, 34:11
**described** [4] - 10:3, 11:2, 21:3, 32:3
**describing** [1] - 22:16
**description** [1] - 11:3
**despite** [1] - 10:8
**destructive** [1] - 37:2
**detained** [2] - 25:5, 31:10
**detention** [6] - 13:8, 13:10, 14:1, 33:22, 33:23, 37:21
**determinations** [1] - 4:19
**determine** [3] - 3:19, 3:22, 36:10
**determined** [1] - 36:1
**deterrence** [6] - 8:9, 11:19, 18:14, 31:24, 32:2, 32:4
**devices** [1] - 37:2
**died** [1] - 28:20
**difference** [1] - 23:22

**differences** [2] - 17:16, 25:1
**different** [7] - 19:8, 19:11, 19:24, 22:1, 25:21, 31:18, 33:12
**difficulties** [1] - 39:19
**directive** [1] - 12:16
**disagree** [1] - 26:9
**disassembled** [1] - 9:22
**disbursement** [1] - 36:15
**discretion** [1] - 37:10
**discretionary** [1] - 35:14
**discussed** [1] - 9:8
**discussing** [1] - 24:21
**dismiss** [1] - 39:13
**dismissed** [1] - 40:8
**disparities** [3] - 8:18, 11:21, 33:2
**disrupts** [1] - 29:7
**disseminating** [1] - 10:20
**distinguishes** [1] - 31:3
**district** [2] - 3:8, 38:8
**District** [5] - 36:7, 36:8, 36:14, 37:25
**DISTRICT** [3] - 1:1, 1:1, 1:9
**disturbing** [1] - 9:6
**Division** [1] - 1:12
**docket** [2] - 5:1, 5:2
**Document** [1] - 5:14
**documents** [1] - 2:17
**DOJ** [1] - 1:12
**DOJ-CRM** [1] - 1:12
**done** [6] - 16:18, 16:21, 23:10, 28:10, 31:11, 40:1
**door** [1] - 23:20
**doors** [1] - 23:15
**double** [2] - 3:1, 15:5
**double-check** [2] - 3:1, 15:5
**doubt** [1] - 5:20
**down** [1] - 16:23
**Dresch** [6] - 18:7, 18:15, 25:3, 31:3, 31:16
**Dresch's** [1] - 31:6
**driven** [2] - 17:18, 33:7
**drug** [4] - 30:23, 30:25, 35:24, 36:1
**drumbeat** [1] - 24:9
**dying** [1] - 27:1

**E**

**early** [3] - 9:18, 22:13, 22:25
**easier** [1] - 5:18
**east** [2] - 9:13, 23:2
**East** [4] - 9:16, 10:2, 22:18, 22:20
**ECF** [3] - 2:13, 2:14, 3:5
**education** [1] - 37:17
**EDWARD** [1] - 1:15
**Edward** [1] - 2:7
**effect** [1] - 9:1
**effectively** [1] - 17:15
**effort** [1] - 29:20
**either** [2] - 12:8, 13:9
**electing** [1] - 29:15
**election** [6] - 20:22, 21:1, 21:4, 21:18, 28:25, 29:2
**electoral** [1] - 29:9
**eligible** [1] - 7:7
**email** [1] - 34:5
**employment** [1] - 37:17
**ended** [2] - 31:12, 31:13
**ends** [1] - 23:8
**enforcement** [1] - 12:15
**engage** [9] - 19:19, 21:19, 21:20, 22:10, 29:3, 30:1, 30:3, 40:1, 40:3
**engaging** [4] - 19:13, 20:2, 22:24, 40:2
**ensure** [1] - 8:2
**enter** [1] - 9:12
**entered** [1] - 38:20
**entire** [1] - 28:5
**entirely** [2] - 22:19, 23:2
**entrepreneur** [1] - 20:15
**entry** [1] - 38:24
**erase** [1] - 11:19
**especially** [1] - 18:12
**essentially** [1] - 22:11
**establish** [1] - 35:17
**estimate** [1] - 32:13
**event** [4] - 28:5, 28:13, 28:18, 31:15
**events** [1] - 9:6
**evidence** [1] - 21:3
**exactly** [1] - 24:2
**example** [1] - 22:2
**except** [1] - 37:17
**excuse** [1] - 10:4

**execute** [1] - 38:8
**Exhibit** [1] - 10:13
**exhibit** [1] - 9:15
**exhibits** [1] - 2:15
**expectations** [1] - 35:17
**expires** [1] - 37:4
**expressed** [1] - 19:13

**F**

**face** [1] - 3:17
**facilitated** [1] - 30:4
**fact** [6] - 6:23, 20:21, 21:22, 24:16, 24:17, 32:16
**factor** [1] - 18:17
**factors** [14] - 3:25, 4:10, 7:24, 8:2, 8:21, 9:2, 9:8, 11:22, 19:24, 20:13, 27:22, 33:13, 33:18, 35:3
**factory** [1] - 20:14
**facts** [4] - 5:19, 5:21, 6:21, 27:21
**factual** [4] - 4:19, 4:23, 5:20, 6:1
**fair** [2] - 4:10, 14:17
**fake** [1] - 24:10
**false** [1] - 10:20
**family** [2] - 20:14, 20:17
**far** [8] - 7:6, 7:8, 7:10, 28:5, 28:12, 30:1, 30:22, 32:4
**fashion** [1] - 4:9
**favor** [1] - 28:23
**Federal** [1] - 1:15
**federal** [3] - 3:15, 29:5, 35:20
**felony** [5] - 11:9, 17:18, 30:24, 30:25, 33:8
**few** [1] - 28:13
**fighting** [4] - 23:15, 23:23, 24:3, 27:3
**file** [2] - 29:4, 39:2
**filed** [3] - 4:14, 6:12, 38:23
**filing** [1] - 38:24
**film** [1] - 30:7
**filmed** [2] - 9:20, 9:21
**finally** [4] - 7:13, 11:6, 37:5, 37:24
**Financial** [1] - 36:16
**financial** [2] - 37:24, 38:4
**findings** [1] - 6:23
**fine** [3] - 5:25, 7:8
**firearm** [1] - 37:1

**firearms** [2] - 25:7, 37:1
**first** [8] - 2:18, 3:18, 4:18, 7:3, 9:12, 19:3, 23:18, 25:16
**firsthand** [1] - 9:14
**fit** [2] - 17:21, 17:23
**five** [2] - 7:7, 27:8
**five-minute** [1] - 27:8
**flexibility** [1] - 2:21
**focus** [3] - 20:17, 21:24, 21:25
**focused** [1] - 20:20
**folks'** [1] - 30:12
**follow** [2] - 12:1, 37:7
**follow-ups** [1] - 37:7
**followers** [1] - 20:25
**following** [5] - 20:22, 35:14, 36:5, 36:15, 37:15
**follows** [1] - 7:2
**FOR** [1] - 1:1
**force** [1] - 9:15
**forced** [1] - 17:22
**forcibly** [1] - 9:20
**Ford** [1] - 36:16
**foregoing** [1] - 41:4
**form** [3] - 37:6, 37:14, 37:22
**former** [1] - 21:5
**forth** [3] - 4:11, 8:22, 9:2
**forward** [5] - 5:25, 16:15, 17:14, 23:9
**four** [2] - 3:13, 36:2
**fourth** [1] - 10:17
**framework** [3] - 4:4, 7:1, 7:17
**FRANCESCO** [1] - 1:11
**Francesco** [1] - 2:5
**frankly** [2] - 17:21, 18:25
**freezing** [1] - 23:1
**friends** [1] - 28:24
**Front** [1] - 10:2
**fulfill** [1] - 29:8
**full** [3] - 32:25, 38:4, 41:5
**fully** [4] - 3:9, 6:6, 11:2, 32:24
**functionally** [1] - 29:12
**fundamental** [1] - 38:15
**future** [2] - 8:10, 31:25

**G**

**Gavito** [3] - 2:7, 5:15,

13:1
**GAVITO** [1] - 1:18
**general** [2] - 11:20, 32:2
**generally** [2] - 5:2, 30:13
**genuine** [1] - 32:6
**given** [5] - 5:3, 17:25, 28:8, 33:4, 33:5
**glad** [1] - 19:2
**glance** [1] - 3:10
**government** [28] - 2:5, 2:15, 2:19, 4:6, 4:18, 4:20, 6:12, 8:21, 8:24, 13:23, 15:14, 15:17, 16:17, 16:22, 16:24, 17:2, 17:17, 19:25, 25:3, 29:24, 30:7, 30:22, 32:15, 34:15, 38:25, 39:12, 39:13, 39:17
**government's** [7] - 12:2, 12:4, 12:10, 15:16, 20:8, 31:17, 33:7
**GPS** [2] - 37:11, 37:12
**granted** [1] - 39:16
**grapple** [1] - 16:12
**grappling** [1] - 16:13
**gravity** [1] - 32:14
**greater** [4] - 8:3, 9:1, 33:19, 35:4
**group** [1] - 22:12
**groups** [1] - 29:25
**guess** [5] - 14:14, 14:16, 14:18, 14:22, 32:23
**guidelines** [4] - 3:23, 4:1, 4:2, 8:13
**guilty** [9] - 3:15, 7:5, 8:19, 11:15, 24:2, 29:10, 32:9, 34:25, 38:13
**guns** [1] - 31:8

## H

**H2-205D** [1] - 36:17
**halfway** [1] - 13:12
**hand** [2] - 17:5, 24:15
**handed** [1] - 16:23
**hands** [2] - 4:16, 16:14
**hang** [1] - 34:16
**hard** [3] - 20:13, 32:4, 32:12
**hard-working** [1] - 20:13
**harm** [1] - 19:20
**Harris** [5] - 5:12, 5:13,

27:16, 27:17, 34:5
**harsh** [1] - 20:10
**health** [1] - 37:18
**hear** [7] - 4:6, 8:21, 11:25, 13:2, 15:11, 18:20, 30:17
**heard** [4] - 4:7, 25:13
**hearing** [3] - 3:13, 3:18, 40:9
**HELD** [1] - 1:8
**held** [1] - 17:13
**help** [1] - 29:17
**helpfully** [1] - 16:23
**helping** [1] - 20:20
**hereby** [2] - 35:9, 41:3
**herein** [1] - 37:7
**himself** [1] - 9:16
**hindsight** [1] - 21:12
**history** [7] - 3:24, 8:15, 11:9, 25:4, 27:25, 31:19, 33:8
**hold** [3] - 13:6, 21:23, 27:17
**holding** [1] - 15:24
**home** [12] - 12:22, 13:7, 13:8, 13:9, 13:10, 13:16, 14:1, 33:22, 33:23, 37:20
**Honor** [24] - 2:20, 2:25, 4:20, 4:25, 6:2, 7:20, 7:22, 8:23, 11:24, 12:19, 13:3, 13:9, 13:25, 14:12, 15:5, 15:12, 18:5, 18:21, 25:13, 34:13, 39:7, 39:9, 39:18, 39:22
**HONORABLE** [1] - 1:8
**hour** [1] - 23:12
**hours** [7] - 14:24, 15:1, 18:22, 22:21, 33:21, 36:21, 36:24
**house** [2] - 13:13, 25:7
**House** [1] - 36:16
**humiliating** [1] - 24:3
**hundreds** [1] - 20:23
**hurt** [2] - 27:1, 27:6
**hybrid** [1] - 37:12

## I

**identified** [1] - 18:6
**ill** [1] - 20:19
**immediately** [2] - 23:6, 37:24
**implications** [1] - 26:7
**important** [5] - 5:7, 9:10, 21:21, 23:22, 33:25

**importantly** [2] - 10:14, 11:6
**impose** [19] - 4:12, 8:2, 11:23, 12:4, 12:5, 12:6, 12:20, 13:4, 13:14, 13:16, 14:15, 14:16, 15:1, 15:20, 26:4, 26:10, 27:8, 35:2
**imposed** [7] - 7:4, 8:6, 8:16, 14:4, 18:24, 35:16, 39:5
**imposing** [1] - 12:17
**improper** [1] - 17:20
**IN** [1] - 1:1
**incarceration** [22] - 7:15, 8:25, 11:23, 12:5, 12:6, 12:22, 13:8, 13:10, 13:15, 13:16, 13:17, 13:20, 13:22, 14:1, 15:22, 16:16, 17:4, 26:5, 32:19, 32:25, 34:22
**inclined** [1] - 26:4
**include** [3] - 8:5, 35:2, 35:19
**included** [1] - 10:11
**includes** [1] - 38:7
**including** [6] - 2:15, 25:7, 26:17, 34:23, 37:11, 37:12
**Indiana** [1] - 1:16
**indicated** [4] - 31:3, 34:20, 37:7, 37:23
**indication** [2] - 19:12, 20:3
**indications** [2] - 17:11, 22:8
**information** [3] - 10:20, 15:10, 20:23
**inside** [1] - 10:14
**instead** [1] - 26:10
**insulting** [1] - 24:3
**intangible** [1] - 28:11
**intent** [1] - 27:5
**intention** [1] - 27:3
**interest** [4] - 19:13, 20:1, 36:11, 36:12
**interested** [1] - 19:17
**interesting** [1] - 17:9
**intermittent** [7] - 14:6, 14:7, 15:16, 15:22, 16:4, 34:1, 34:21
**investigation** [1] - 38:6
**invited** [1] - 22:12
**involuntary** [2] - 38:14
**involved** [1] - 24:17
**issue** [5] - 4:5, 18:13, 19:2, 21:5, 32:11

**itself** [1] - 38:22

## J

**Jackson** [1] - 17:15
**jail** [1] - 30:22
**January** [18] - 9:4, 9:19, 10:17, 11:4, 11:11, 11:12, 11:18, 11:21, 18:8, 18:15, 19:18, 20:6, 20:12, 22:14, 28:3, 32:3, 40:4
**joined** [3] - 9:6, 10:1, 25:23
**Judge** [4] - 14:8, 17:15, 26:22, 40:2
**judge** [1] - 31:11
**JUDGE** [2] - 1:8, 1:9
**judges** [5] - 14:4, 16:11, 16:12, 16:24, 33:4
**judgment** [3] - 35:8, 36:20, 38:24
**July** [1] - 4:15

## K

**Karl** [1] - 18:15
**keep** [1] - 3:14
**Kelly** [1] - 26:22
**KELLY** [1] - 1:8
**kind** [2] - 12:3, 30:22
**kinds** [1] - 8:17
**knows** [3] - 19:18, 23:21, 31:11

## L

**laid** [1] - 16:20
**language** [1] - 10:4
**last** [4] - 4:9, 4:12, 7:14, 22:11
**latecomer** [3] - 9:18, 22:14, 25:19
**law** [3] - 8:7, 29:17, 31:22
**laws** [2] - 28:14, 29:2
**lawsuit** [1] - 29:4
**lawyer** [1] - 29:23
**lawyers** [1] - 21:7
**lays** [3] - 6:24, 6:25, 16:24
**least** [5] - 10:2, 20:11, 24:18, 31:6, 35:25
**left** [2] - 10:15, 24:6
**lengthy** [1] - 17:4
**less** [3] - 30:10, 30:13, 36:20
**lesser** [2] - 16:7, 16:8

**letter** [2] - 30:17
**letters** [1] - 20:19
**level** [1] - 11:14
**life** [4] - 21:23, 21:24, 22:4, 30:19
**light** [4] - 2:22, 4:10, 15:19, 27:22
**limitations** [1] - 15:23
**limited** [2] - 29:24, 29:25
**limits** [1] - 16:3
**link** [1] - 16:22
**listening** [1] - 24:9
**lived** [1] - 17:23
**local** [1] - 35:20
**location** [5] - 37:5, 37:6, 37:8, 37:9, 37:14, 37:22
**look** [3] - 5:8, 5:20, 16:10
**looked** [2] - 16:19, 16:21
**looking** [5] - 5:1, 16:18, 16:21, 33:3, 33:12
**loss** [1] - 36:18
**lost** [1] - 34:2
**love** [1] - 15:11
**luck** [3] - 39:10, 39:23, 40:5

## M

**mad** [1] - 34:15
**man** [1] - 20:13
**mandatory** [3] - 7:9, 35:14, 35:19
**manner** [1] - 27:6
**mate** [1] - 9:22
**materials** [2] - 2:17, 2:21
**matter** [4] - 6:7, 7:3, 7:24, 29:14
**Matter** [2] - 2:3, 27:14
**maximum** [3] - 7:4, 7:5, 7:8
**mayhem** [1] - 10:8
**mayor** [1] - 21:5
**mean** [8] - 13:7, 13:21, 14:24, 17:4, 25:3, 30:10, 30:20, 32:20
**means** [2] - 14:19, 14:21
**meant** [1] - 25:24
**measure** [1] - 32:10
**media** [2] - 22:8, 24:7
**medical** [1] - 37:18
**members** [1] - 23:4
**memo** [3] - 11:2, 16:20, 24:8

**memoranda** [1] - 2:14
**memorandum** [4] - 9:8, 10:12, 10:23, 23:19
**mental** [1] - 37:18
**mentioned** [2] - 8:16, 28:11
**message** [1] - 15:5
**MESSER** [1] - 1:5
**Messer** [60] - 2:4, 2:8, 2:18, 3:12, 6:5, 6:19, 7:5, 7:15, 8:1, 9:6, 9:12, 9:16, 9:17, 9:23, 9:25, 10:2, 10:7, 10:9, 10:13, 10:15, 11:14, 17:10, 17:21, 17:23, 18:25, 19:12, 19:14, 19:16, 19:21, 20:1, 20:9, 20:11, 20:13, 20:22, 21:10, 22:3, 22:6, 22:14, 22:17, 22:21, 22:23, 23:6, 23:22, 23:24, 25:8, 26:15, 26:19, 27:15, 27:23, 28:3, 28:14, 32:8, 32:18, 32:22, 33:21, 33:25, 34:24, 35:9, 38:12, 39:23
**Messer's** [12] - 2:10, 10:5, 10:17, 11:7, 11:11, 19:3, 19:4, 20:4, 20:7, 25:18, 33:5, 33:8
**microphones** [1] - 27:10
**might** [4] - 5:7, 19:17, 20:9, 21:18
**millions** [2] - 20:24, 21:12
**mind** [3] - 3:14, 10:5, 20:4
**minimize** [2] - 20:5, 20:6
**minimum** [1] - 11:13
**minute** [3] - 22:11, 23:8, 27:8
**minutes** [1] - 24:4
**misdemeanor** [4] - 7:6, 17:3, 24:24
**misunderstanding** [2] - 14:18, 14:23
**mitigating** [1] - 3:25
**mob** [3] - 10:1, 29:6, 29:12
**moment** [1] - 34:2
**monitor** [1] - 37:15
**monitored** [2] - 37:6, 37:22
**monitoring** [8] - 37:5,

37:6, 37:8, 37:10, 37:11, 37:12, 37:14, 37:23
**month** [2] - 7:14, 36:21
**months** [15] - 7:6, 8:24, 11:23, 13:22, 13:23, 17:15, 18:22, 20:22, 25:6, 31:14, 33:21, 33:22, 33:23, 35:9, 36:22
**morning** [2] - 22:13, 22:25
**most** [4] - 7:13, 9:10, 15:19, 28:11
**mother** [2] - 20:18, 20:19
**motion** [2] - 39:11, 39:15
**move** [3] - 7:23, 30:4, 39:13
**moved** [2] - 21:23, 23:9
**movement** [1] - 37:15
**moving** [2] - 21:25, 22:3
**MR** [31] - 2:20, 2:25, 3:6, 3:10, 4:20, 4:25, 5:15, 5:25, 6:2, 6:4, 7:20, 7:22, 8:23, 12:11, 15:21, 16:3, 16:8, 18:5, 18:21, 19:7, 25:13, 25:16, 26:14, 26:19, 34:13, 34:17, 39:7, 39:9, 39:13, 39:18, 39:22
**multiple** [1] - 31:7
**must** [13] - 7:16, 8:1, 8:13, 35:19, 35:21, 35:23, 35:24, 36:2, 36:19, 36:21, 36:23, 37:7, 38:23
**muted** [1] - 27:20

**N**

**N.W** [1] - 41:11
**nation** [1] - 9:5
**national** [1] - 21:5
**nature** [4] - 8:14, 22:5, 27:24, 28:2
**necessary** [4] - 8:3, 9:1, 33:19, 35:4
**need** [7] - 8:5, 8:15, 8:17, 8:19, 11:19, 11:20, 15:4
**neighbors** [1] - 28:24
**New** [1] - 21:5
**news** [1] - 24:10
**next** [1] - 31:20

**nine** [1] - 13:22
**none** [2] - 21:15, 21:16
**normally** [1] - 12:7
**Northwest** [1] - 38:1
**noted** [2] - 25:2, 39:5
**notes** [1] - 41:5
**nothing** [6] - 19:14, 19:22, 20:2, 29:13, 40:2, 40:7
**notice** [3] - 38:23, 38:24, 38:25
**notify** [1] - 38:2
**number** [4] - 17:5, 19:12, 31:2, 34:25
**Number** [1] - 3:5
**Numbers** [2] - 2:13, 2:14
**NW** [3] - 1:13, 1:16, 1:23

**O**

**objection** [3] - 4:18, 4:23, 5:20
**objections** [5] - 3:20, 3:21, 6:1, 39:4, 39:7
**obligation** [1] - 38:4
**obligations** [2] - 37:19, 37:24
**observed** [2] - 9:20, 9:21
**obviously** [2] - 26:16, 40:4
**occur** [1] - 36:12
**October** [1] - 41:7
**OF** [4] - 1:1, 1:2, 1:8, 41:1
**offender** [1] - 30:15
**offenders** [1] - 20:12
**offense** [19] - 4:2, 4:13, 7:4, 8:7, 8:8, 8:14, 8:20, 17:10, 18:10, 22:6, 27:24, 28:2, 28:8, 29:9, 30:11, 31:21, 31:23, 32:10
**offenses** [2] - 10:6, 31:8
**offered** [1] - 18:15
**Office** [5] - 1:15, 2:6, 36:16, 36:17, 38:7
**office** [6] - 2:13, 4:15, 26:2, 35:15, 38:5, 38:10
**office's** [1] - 6:10
**OFFICER** [12] - 12:19, 13:3, 13:9, 13:19, 13:25, 14:7, 14:12, 14:18, 14:22, 15:4,

15:8, 15:12
**Officer** [2] - 1:18, 36:16
**officer** [5] - 12:25, 36:22, 36:25, 37:11, 37:20
**officers** [5] - 11:6, 23:20, 23:23, 23:24, 24:4
**Official** [2] - 1:22, 41:10
**OFFICIAL** [1] - 41:1
**Ohio** [1] - 36:8
**old** [1] - 30:16
**one** [20] - 2:25, 4:25, 7:16, 13:6, 16:11, 17:5, 17:9, 19:12, 24:22, 25:2, 25:10, 28:4, 28:9, 31:4, 31:6, 34:25, 35:19, 35:24
**online** [1] - 21:11
**operating** [2] - 4:4, 7:18
**opportunity** [2] - 4:3, 7:25
**options** [1] - 35:16
**order** [2] - 12:10, 38:8
**ordered** [5] - 12:12, 12:13, 35:11, 36:9, 37:19
**origin** [1] - 25:22
**outside** [1] - 23:13
**outstanding** [1] - 3:20
**overall** [3] - 28:12, 28:13, 29:12
**overly** [1] - 20:9
**own** [1] - 9:21
**owns** [1] - 20:15

**P**

**p.m** [2] - 1:6, 40:9
**paid** [1] - 38:4
**papers** [1] - 6:12
**paperwork** [1] - 6:10
**parallels** [1] - 17:10
**part** [10] - 3:1, 4:11, 7:23, 18:6, 23:7, 23:15, 29:6, 29:13, 29:25, 38:20
**Part** [1] - 35:15
**participant** [1] - 9:25
**particular** [1] - 27:21
**parties** [6] - 2:14, 3:4, 3:9, 5:3, 33:16, 40:8
**patriotic** [1] - 29:14
**pause** [1] - 34:3
**Pause** [1] - 34:4
**pay** [3] - 35:11, 36:11,

36:19
**payable** [1] - 37:25
**payments** [1] - 36:13
**peaceful** [4] - 11:4, 28:8, 29:3, 29:19
**penalties** [2] - 4:5, 36:12
**Pennsylvania** [1] - 1:13
**people** [15] - 19:21, 21:6, 21:14, 22:9, 22:12, 23:9, 23:17, 23:23, 24:17, 27:1, 28:15, 28:19, 32:5, 32:13
**per** [1] - 36:20
**perfect** [1] - 5:18
**perfectly** [1] - 33:10
**perhaps** [2] - 12:15, 21:21
**period** [5] - 16:7, 32:22, 37:7, 37:23
**periodic** [1] - 35:25
**permission** [1] - 39:1
**person** [10] - 17:12, 17:13, 19:8, 19:21, 23:25, 24:3, 28:4, 28:25, 32:10
**photographs** [1] - 10:9
**pick** [1] - 5:13
**picked** [1] - 23:5
**picture** [2] - 24:5, 24:12
**pistol** [1] - 25:8
**place** [1] - 9:7
**placement** [1] - 35:25
**plain** [1] - 31:19
**Plaintiff** [2] - 1:3, 1:11
**plan** [1] - 22:8
**planning** [1] - 30:2
**plans** [1] - 22:7
**played** [1] - 29:20
**Plaza** [3] - 9:16, 22:18, 22:20
**plea** [6] - 18:10, 38:13, 38:16, 38:20, 38:21, 39:14
**plead** [1] - 17:3
**pleaded** [1] - 11:15
**pleading** [1] - 34:24
**pled** [6] - 3:15, 7:5, 17:13, 24:2, 29:10, 32:9
**plenty** [1] - 19:17
**point** [15] - 5:24, 9:9, 12:3, 14:14, 16:13, 19:25, 21:24, 23:4, 25:18, 25:20, 26:6, 26:7, 31:1, 32:23,

33:15
**points** [1] - 30:7
**police** [6] - 23:15, 23:20, 23:23, 23:24, 24:3, 27:3
**Police** [1] - 10:15
**politics** [3] - 40:1, 40:2, 40:3
**poses** - 18:13
**position** [6] - 12:3, 12:4, 12:10, 12:11, 19:25, 25:21
**possess** [1] - 35:21
**possessing** [1] - 11:10
**possession** [5] - 11:13, 17:19, 18:12, 30:24, 33:8
**possibility** [1] - 34:1
**posted** [1] - 10:2
**posture** [1] - 17:6
**potential** [1] - 4:4
**power** [3] - 11:4, 28:9, 29:19
**practice** [1] - 3:2
**practices** [1] - 29:16
**pre** [1] - 37:20
**pre-approved** [1] - 37:20
**prefer** [1] - 26:5
**preliminary** [1] - 7:3
**preparation** [1] - 2:18
**prepared** [2] - 6:18, 18:18
**Present** [1] - 1:18
**present** [4] - 2:5, 2:6, 2:7, 2:8
**presentence** [11] - 2:11, 3:19, 4:14, 6:11, 6:22, 6:24, 6:25, 35:16, 38:5, 38:9
**preserve** [1] - 28:17
**President** [11] - 20:25, 21:2, 21:9, 21:14, 21:17, 23:3, 24:5, 28:9, 28:23, 29:9, 29:15
**press** [1] - 34:3
**pretty** [2] - 16:18, 17:1
**prevent** [1] - 23:20
**previously** [1] - 29:18
**prison** [2] - 20:9, 24:21
**Prisons** [3] - 13:11, 13:13, 14:2
**Probation** [3] - 1:18, 2:6, 38:7
**PROBATION** [12] - 12:19, 13:3, 13:9,

13:19, 13:25, 14:7, 14:12, 14:18, 14:22, 15:4, 15:8, 15:12
**probation** [44] - 2:12, 3:2, 4:15, 6:10, 7:6, 7:7, 7:16, 12:5, 12:8, 12:14, 12:17, 12:18, 12:21, 12:24, 13:5, 13:20, 13:24, 14:11, 14:13, 14:15, 15:2, 15:18, 16:14, 17:25, 18:22, 24:22, 25:10, 25:11, 26:10, 32:19, 32:20, 32:23, 32:24, 33:21, 33:23, 33:25, 35:10, 35:15, 36:22, 36:24, 37:10, 38:5, 38:10
**probation's** [1] - 19:1
**probationary** [1] - 15:25
**problems** [1] - 31:15
**proceed** [2] - 3:13, 5:22, 6:18
**proceeding** [5] - 3:16, 5:9, 5:14, 6:25, 29:15
**proceedings** [3] - 34:4, 38:15, 41:6
**process** [2] - 29:8, 29:15
**program** [3] - 36:23, 37:8, 37:9
**prohibited** [1] - 11:8
**promote** [3] - 8:7, 8:10, 31:25
**promotes** [1] - 31:22
**property** [1] - 30:4
**protect** [2] - 8:9, 31:25
**protests** [1] - 29:3
**provide** [4] - 8:7, 8:20, 27:23, 36:23
**provides** [1] - 31:22
**provisions** [1] - 35:7
**Public** [1] - 1:15
**public** [3] - 8:9, 18:14, 31:25
**punishment** [2] - 8:8, 31:23
**purposes** [7] - 5:19, 6:23, 8:3, 8:5, 8:16, 33:20, 35:4
**pursuant** [2] - 35:6, 39:14
**pursuit** [1] - 25:5
**puts** [1] - 25:21
**putting** [1] - 20:9

**Q**

**quantity** [1] - 18:12
**questions** [1] - 16:11
**quickly** [1] - 25:14
**quite** [2] - 30:18, 31:18
**quote** [1] - 24:10
**quote-unquote** [1] - 24:10

**R**

**racks** [2] - 23:5, 23:8
**radiofrequency** [1] - 37:11
**range** [2] - 3:24, 14:3
**rare** [1] - 17:1
**rate** [1] - 36:20
**read** [2] - 6:14, 30:16
**reading** [1] - 21:11
**Reagan** [1] - 24:5
**realize** [1] - 27:20
**really** [5] - 19:7, 20:11, 24:17, 32:10, 32:13
**realm** [1] - 15:25
**reason** [3] - 5:3, 18:6, 18:15
**reasons** [3] - 25:9, 32:3, 34:20
**receive** [1] - 11:15
**received** [3] - 2:11, 2:13, 20:19
**recent** [3] - 15:19, 17:11, 31:7
**recess** [2] - 27:8, 27:12
**recognition** [1] - 37:13
**recommendation** [11] - 2:12, 3:3, 5:5, 8:22, 17:18, 18:18, 18:22, 19:1, 26:10, 33:7, 33:13
**recommendations** [1] - 26:3
**recommended** [1] - 35:15
**reconnect** [1] - 34:7
**reconvene** [1] - 27:11
**record** [6] - 2:2, 8:5, 20:3, 27:13, 27:23, 39:6
**recorded** [2] - 9:16, 10:13
**recording** [1] - 10:10
**records** [1] - 8:18
**recurring** [1] - 18:14
**referenced** [1] - 2:16
**referred** [1] - 21:6

**reflect** [1] - 8:6
**reflected** [2] - 11:1, 18:9
**reflects** [1] - 21:22
**Reform** [1] - 35:6
**refrain** [1] - 35:23
**regard** [5] - 7:18, 16:5, 27:24, 28:1, 35:1
**regret** [1] - 26:24
**regrets** [1] - 23:10
**regulations** [1] - 37:8
**rehabilitation** [2] - 8:11, 32:1
**reiterate** [1] - 33:6
**rejoin** [1] - 34:3
**related** [2] - 21:15, 21:16
**relates** [1] - 19:23
**relatively** [1] - 33:6
**release** [4] - 7:11, 12:9, 38:5
**relevancy** [1] - 9:8
**relevant** [3] - 7:12, 25:2, 27:22
**religious** [1] - 37:17
**reluctant** [1] - 9:25
**rely** [1] - 5:6
**remain** [2] - 15:25, 27:9
**remoteness** [1] - 34:25
**remove** [1] - 37:1
**repeated** [1] - 40:5
**repeating** [1] - 9:9
**report** [15] - 2:11, 3:19, 3:20, 4:14, 4:19, 4:24, 6:11, 6:22, 6:24, 6:25, 14:5, 35:16, 38:6, 38:9
**REPORTER** [2] - 12:24, 41:1
**Reporter** [1] - 1:21, 1:22, 41:10
**request** [2] - 31:18, 39:1
**requested** [1] - 17:4
**requesting** [1] - 8:24
**required** [1] - 4:13
**requirement** [1] - 13:17
**requires** [1] - 4:9
**research** [1] - 26:6
**residence** [3] - 11:7, 37:16, 38:8
**resolve** [1] - 3:21
**respect** [4] - 8:7, 18:13, 22:5, 31:22
**respects** [1] - 10:18

**response** [2] - 24:24, 25:17
**responsibility** [7] - 11:15, 11:17, 21:22, 22:3, 27:4, 32:9, 34:24
**responsible** [1] - 28:6
**restitution** [12] - 8:20, 11:24, 18:23, 24:23, 25:12, 33:16, 33:17, 36:2, 36:4, 36:9, 36:13, 36:19
**restricted** [3] - 9:13, 9:24, 37:16
**restriction** [2] - 37:1, 37:15
**result** [1] - 3:17
**return** [1] - 38:9
**review** [1] - 2:18
**reviewed** [2] - 2:11, 3:19
**revisionist** [1] - 10:25
**reward** [1] - 11:16
**RF** [1] - 37:11
**rifle** [1] - 25:7
**rights** [4] - 28:15, 28:16, 28:17, 38:21
**riot** [11] - 9:7, 9:17, 9:18, 10:1, 10:20, 22:15, 22:21, 22:22, 25:19, 25:22
**rioters** [2] - 9:14, 9:20
**riotous** [1] - 22:24
**RMR** [2] - 1:21, 41:9
**role** [7] - 18:8, 28:11, 29:8, 29:21, 29:22, 29:24
**roofing** [1] - 20:15
**Room** [3] - 1:22, 36:17, 41:10
**Rotunda** [3] - 10:14, 10:15, 23:16
**routine** [1] - 3:7
**rule** [1] - 29:17
**ruled** [2] - 32:17, 32:18
**rules** [1] - 37:8
**ruling** [1] - 16:13
**rulings** [1] - 34:15

**S**

**safety** [1] - 18:14
**sake** [1] - 18:2
**satisfied** [1] - 6:6
**saw** [4] - 3:2, 23:19, 26:16, 34:2
**scale** [1] - 30:12
**screaming** [1] - 23:24
**searched** [1] - 11:6

**second** [3] - 3:22, 9:25, 13:6
**seconds** [1] - 23:8
**Section** [5] - 1:12, 4:11, 7:10, 35:8, 35:13
**Sections** [1] - 36:3
**security** [1] - 21:5
**see** [4] - 5:11, 20:18, 22:8, 30:1
**SEFRANEK** [1] - 41:3
**Sefranek** [3] - 1:21, 41:9, 41:9
**selfies** [1] - 10:9, 10:11
**send** [1] - 5:12
**sense** [1] - 5:7
**sent** [1] - 5:15
**sentence** [34] - 4:10, 4:12, 7:4, 7:14, 7:15, 8:2, 8:6, 8:8, 8:16, 8:18, 8:24, 8:25, 9:1, 9:2, 11:23, 14:10, 15:18, 16:1, 25:9, 27:9, 31:22, 31:24, 32:18, 32:24, 33:1, 33:21, 35:1, 35:2, 36:4, 38:8, 38:19, 38:22, 39:5
**sentenced** [2] - 17:14, 35:9
**sentences** [7] - 8:17, 16:22, 18:24, 25:1, 32:16, 33:4
**Sentencing** [2] - 10:12, 35:6
**SENTENCING** [2] - 1:4, 1:8
**sentencing** [32] - 2:10, 2:12, 2:14, 2:18, 3:3, 3:13, 3:23, 4:1, 4:2, 4:4, 4:8, 6:13, 6:19, 6:23, 7:1, 8:4, 8:22, 10:12, 10:23, 16:20, 18:13, 23:19, 24:8, 25:6, 31:11, 31:13, 33:7, 33:12, 33:20, 35:5, 35:16
**separate** [4] - 12:17, 12:21, 23:3, 30:24
**September** [1] - 1:6
**serious** [14] - 11:12, 18:25, 19:20, 20:11, 25:4, 25:6, 28:7, 28:12, 30:10, 30:11, 30:12, 30:14, 31:16, 32:12
**seriousness** [8] - 3:14, 8:6, 11:17, 20:5, 20:7, 24:20,

30:12, 31:21
**serve** [1] - 32:22
**served** [2] - 17:15, 31:13
**service** [24] - 11:24, 12:6, 12:7, 12:12, 12:17, 12:21, 13:18, 14:16, 14:19, 14:20, 14:21, 14:23, 14:24, 15:1, 18:23, 24:23, 25:11, 26:2, 26:8, 26:11, 33:22, 36:21, 36:22, 36:23
**services** [1] - 37:17
**set** [3] - 4:10, 8:21, 9:2
**seven** [1] - 14:5
**several** [3] - 10:18, 22:20, 25:6
**shall** [7] - 35:13, 36:5, 36:13, 37:1, 38:2, 38:5, 38:9
**Shit** [1] - 10:4
**shoot** [1] - 34:5
**short** [2] - 10:13, 14:2
**shotguns** [1] - 25:8
**showed** [1] - 22:13
**sic** [1] - 7:19
**sick** [1] - 20:18
**side** [7] - 9:13, 21:6, 21:7, 23:2, 24:13, 27:2, 30:13
**significant** [3] - 11:7, 18:9, 30:1
**similar** [3] - 8:18, 8:19, 33:5
**simple** [1] - 31:19
**simply** [1] - 22:25
**sincere** [1] - 34:13
**situated** [1] - 24:13
**situation** [4] - 17:7, 17:13, 19:11, 28:18
**six** [4] - 7:5, 17:14, 25:6, 31:14
**slate** [1] - 31:12
**SmartLink** [1] - 37:12
**SMOCK** [15] - 1:15, 2:25, 3:6, 3:10, 4:25, 5:15, 5:25, 6:2, 6:4, 7:22, 18:21, 19:7, 26:19, 39:9, 39:22
**Smock** [17] - 2:7, 2:24, 4:23, 5:12, 5:22, 6:5, 6:7, 6:16, 7:21, 12:1, 15:15, 16:19, 18:20, 26:15, 33:14, 39:8, 39:21
**Smock's** [2] - 25:17, 31:1
**social** [2] - 22:8, 24:7
**someone** [4] - 17:2,

25:23, 32:21
**sometimes** [2] - 32:12, 34:15
**son** [1] - 30:17
**sorry** [7] - 7:21, 12:23, 12:24, 13:23, 14:21, 27:19, 32:5
**sort** [4] - 16:5, 17:14, 19:14, 31:12
**Southern** [1] - 36:8
**speakers** [1] - 22:18
**speaking** [1] - 23:3
**special** [3] - 7:9, 35:11, 36:5
**specific** [2] - 11:20, 32:4
**specifically** [1] - 24:12
**speech** [1] - 23:2
**spent** [2] - 16:18, 33:3
**stake** [2] - 32:7, 32:11
**stand** [1] - 11:2
**standing** [1] - 21:8
**stands** [1] - 23:14
**start** [1] - 12:2
**started** [2] - 10:16, 22:23
**state** [3] - 10:5, 29:4, 35:20
**statement** [1] - 26:17
**statements** [4] - 4:24, 10:22, 10:24, 19:25
**States** [17] - 1:22, 2:3, 2:6, 4:11, 7:10, 7:25, 9:7, 20:25, 21:9, 21:17, 27:14, 35:7, 35:12, 36:3, 36:7, 36:14, 38:7
**STATES** [3] - 1:1, 1:2, 1:9
**statistics** [1] - 21:3
**statute** [1] - 36:4
**statutes** [1] - 7:12
**statutory** [5] - 7:1, 7:4, 7:5, 7:17, 7:24
**stenographic** [1] - 41:5
**step** [5] - 3:18, 3:22, 4:6, 4:9, 4:12
**Step** [1] - 6:25
**steps** [2] - 3:13, 10:1
**still** [3] - 12:10, 34:11, 34:16
**stood** [2] - 22:20, 22:25
**stories** [1] - 24:9
**stormed** [1] - 10:4
**straight** [2] - 13:22, 14:5
**streak** [1] - 29:18
**street** [1] - 21:8

**strongly** [1] - 34:21
**stuff** [1] - 21:11
**stumble** [1] - 9:17
**submit** [1] - 35:24
**submitted** [3] - 9:15, 10:12, 26:16
**substance** [3] - 35:22, 35:24, 37:18
**substantial** [1] - 18:16
**substantially** [2] - 16:8, 16:9
**successful** [1] - 30:16
**sufficient** [4] - 8:2, 8:25, 33:19, 35:3
**suggest** [1] - 25:11
**suggested** [2] - 19:17, 31:9
**suggesting** [2] - 20:1
**suggestion** [1] - 20:8
**suggests** [1] - 25:10
**Suite** [1] - 1:16
**summarize** [1] - 7:2
**supervised** [3] - 7:10, 7:11, 12:8
**supervision** [5] - 35:13, 35:18, 35:25, 36:6, 37:3
**support** [2] - 20:14, 29:17
**supposed** [1] - 11:4
**surrounding** [1] - 11:18
**swept** [2] - 21:10, 21:13

**T**

**Tamara** [1] - 1:21, 41:9, 41:9
**TAMARA** [1] - 41:3
**tangible** [1] - 28:10
**technical** [1] - 39:19
**technology** [4] - 37:6, 37:10, 37:14, 37:23
**term** [26] - 12:12, 12:16, 12:17, 12:20, 13:4, 13:10, 13:14, 13:16, 13:17, 13:19, 13:24, 14:2, 15:2, 15:22, 16:4, 16:14, 16:15, 17:4, 25:11, 26:4, 26:7, 26:10, 32:20, 33:25, 35:9, 37:3
**termination** [1] - 38:11
**terms** [3] - 14:3, 16:14, 18:9
**test** [1] - 35:24
**tests** [1] - 36:1

**THE** [83] - 1:1, 1:1, 1:8, 2:2, 2:9, 2:23, 3:5, 3:7, 3:12, 4:22, 5:10, 5:17, 6:1, 6:3, 6:5, 6:8, 6:9, 6:14, 6:15, 6:17, 6:18, 6:20, 6:21, 7:21, 7:23, 11:25, 12:18, 12:19, 12:23, 12:24, 13:1, 13:3, 13:6, 13:9, 13:14, 13:19, 13:21, 13:25, 14:6, 14:7, 14:9, 14:12, 14:14, 14:18, 14:21, 14:22, 14:25, 15:4, 15:7, 15:8, 15:10, 15:12, 15:13, 16:2, 16:5, 16:9, 18:20, 19:6, 25:15, 26:13, 26:15, 26:20, 26:21, 26:22, 27:7, 27:13, 27:16, 27:18, 27:19, 34:5, 34:6, 34:8, 34:9, 34:11, 34:14, 34:18, 39:8, 39:10, 39:15, 39:20, 39:23, 40:6, 40:7
**thereafter** [1] - 36:1
**therefore** [2] - 11:11, 36:11
**they've** [1] - 6:11
**third** [2] - 4:6, 10:7
**thoughts** [1] - 27:23
**thousands** [1] - 20:24
**threat** [1] - 29:7
**threaten** [1] - 28:8
**three** [6] - 8:24, 11:23, 13:23, 33:22, 33:23, 35:23
**tide** [1] - 21:13
**tie** [1] - 16:14
**TIMOTHY** [1] - 1:8
**today** [5] - 3:13, 3:18, 6:19, 26:18, 30:17
**today's** [1] - 3:16
**together** [1] - 28:7
**took** [3] - 9:7, 24:4, 24:5
**top** [1] - 21:6
**torrent** [1] - 20:23
**totally** [4] - 19:8, 19:11, 22:15, 24:11
**touch** [1] - 9:10
**toward** [2] - 30:10, 30:13
**towards** [1] - 23:6
**tradition** [1] - 29:19
**tragedy** [1] - 27:2
**TRANSCRIPT** [1] - 1:8
**transcript** [2] - 41:4,

41:6
**transfer** [3] - 11:4, 28:9, 29:19
**transferred** [1] - 36:7
**travel** [1] - 9:22
**treatment** [3] - 37:18, 38:9, 38:11
**trial** [1] - 22:2
**triumphant** [1] - 10:3
**troubling** [1] - 10:18
**true** [3] - 24:7, 41:4, 41:5
**Trump** [1] - 21:2
**try** [2] - 28:24, 29:1
**trying** [3] - 3:1, 22:22, 23:20
**turn** [2] - 27:10, 29:22
**two** [7] - 10:2, 10:11, 25:7, 26:3, 34:25, 35:21, 35:25
**types** [1] - 32:16

## U

**U.S** [1] - 37:25
**ultimately** [2] - 23:13, 29:2
**unable** [1] - 38:25
**unbroken** [1] - 29:18
**under** [7] - 4:1, 4:4, 7:9, 7:11, 7:18, 7:24, 33:25
**understood** [3] - 2:23, 26:13
**undo** [1] - 11:17
**unfolding** [1] - 25:22
**UNITED** [3] - 1:1, 1:2, 1:9
**United** [17] - 1:22, 2:3, 2:6, 4:11, 7:10, 7:25, 9:7, 20:25, 21:9, 21:17, 27:14, 35:7, 35:12, 36:3, 36:7, 36:14, 38:7
**unlawful** [3] - 35:23, 38:13, 38:14
**unlawfully** [2] - 9:12, 35:21
**unmistakable** [1] - 10:6
**unquote** [1] - 24:10
**unusual** [3] - 17:7, 17:13, 33:6
**unwanted** [2] - 8:17, 33:1
**unwarranted** [1] - 11:20
**up** [12] - 7:7, 14:3, 15:22, 17:23, 21:10, 21:13, 22:12, 22:13,

23:5, 23:8, 31:12, 31:13
**ups** [1] - 12:1
**urging** [1] - 22:9

## V

**vague** [1] - 16:5
**Valenti** [1] - 7:19
**Valentini** [9] - 2:5, 7:21, 18:3, 22:14, 23:12, 34:2, 34:9, 34:18, 39:6
**VALENTINI** [18] - 1:11, 2:20, 4:20, 7:20, 8:23, 12:11, 15:21, 16:3, 16:8, 18:5, 25:13, 25:16, 26:14, 34:13, 34:17, 39:7, 39:13, 39:18
**verification** [1] - 36:24
**VIA** [2] - 1:4, 1:8
**victim** [1] - 36:15
**victims** [1] - 8:20
**video** [7] - 2:15, 9:15, 9:16, 10:10, 10:13, 24:5, 27:10
**view** [2] - 11:3, 13:15
**views** [1] - 21:24
**violence** [11] - 19:13, 19:19, 20:2, 21:16, 21:20, 22:10, 29:7, 29:10, 30:3
**vis** [2] - 25:21
**vis-a-vis** [1] - 25:21
**visits** [1] - 37:19
**voice** [1] - 37:12
**vote** [3] - 28:22, 28:24, 29:9
**vs** [1] - 1:4

## W

**waiting** [1] - 23:1
**waive** [2] - 36:11, 38:19
**waived** [2] - 37:9, 38:16
**waives** [1] - 38:21
**walked** [1] - 23:19
**walking** [4] - 23:9, 26:23, 28:4, 32:5
**Walter** [3] - 2:4, 27:14, 35:9
**WALTER** [1] - 1:5
**warrant** [2] - 4:1, 20:9
**Washington** [10] - 1:5, 1:13, 1:17, 1:23, 21:19, 22:6, 22:7, 36:17, 38:1, 41:11

**waste** [1] - 10:24
**weapons** [1] - 37:2
**week** [1] - 14:5
**weeks** [2] - 22:7, 22:9
**weigh** [2] - 33:14, 34:1
**weighed** [1] - 33:24
**west** [1] - 24:12
**whatsoever** [2] - 19:13, 19:15
**whole** [3] - 28:7, 30:5, 30:9
**wish** [2] - 4:7, 18:1
**witnessing** [1] - 9:14
**words** [2] - 15:3, 28:13
**works** [1] - 12:7
**wrinkle** [1] - 15:14
**writing** [1] - 31:12
**written** [1] - 36:24
**wronged** [1] - 29:4
**wrongly** [2] - 21:4, 21:18

## Y

**years** [5] - 7:7, 19:4, 19:23, 20:14, 30:15
**yelling** [2] - 23:24, 27:3
**York** [1] - 21:5
**you-all** [4] - 3:19, 4:16, 4:23, 33:3
**yourself** [1] - 30:3

## Z

**ZOOM** [2] - 1:4, 1:8